636 So.2d 1069 (1994)
STATE of Louisiana
v.
James SOLER.
No. 93-KA-1042.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 1994.
Writ Denied April 4, 1994.
*1071 John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Vincent Booth, New Orleans, for defendant-appellant.
Before GAUDIN, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
James Soler was charged by bill of information with molestation of a juvenile, (Count 1), in violation of La.R.S. 14:81.2 and with cruelty to a juvenile, (Count 2), in violation of La.R.S. 14:93, involving his stepson. He pled not guilty. After a jury trial, defendant was found guilty of indecent behavior with a juvenile on Count 1 and found guilty as charged on Count 2. The trial court set an appeal bond and a date for sentencing. Defendant filed a motion for new trial. Subsequently, new counsel for defendant enrolled.
*1072 At the August 27, 1993, hearing on the motion for new trial, defense counsel orally added the claim of ineffective assistance of counsel as one of the grounds for the motion. He argued that the verdict was contrary to the law and evidence because the defendant did not receive effective assistance of counsel. The trial court denied the motion, finding that the claim of ineffective assistance of counsel could not be raised in a motion for new trial. Rather, that court agreed with the state that those allegations should be raised in an application for post-conviction relief. The trial court also ruled that defendant could proffer evidence on the ineffective assistance of counsel claim, but the record does not show that any such evidence was introduced.
Defendant applied for supervisory writs with this Court seeking an order to the trial court to hold an evidentiary hearing on the claim. In State v. Soler, 93-K-742, decided September 16, 1993, this Court denied the writ.
The trial court sentenced defendant for each conviction to five years at hard labor, with the sentences to be served concurrently. The trial court also set an appeal bond. Thereafter, the state filed a multiple offender bill alleging that defendant was a multiple offender. Defendant denied the allegations of the multiple bill. At the multiple offender hearing, defendant stipulated that he was the same man who was arrested and convicted of a prior felony in 1991. Documentary evidence regarding defendant's instant convictions and predicate conviction was introduced. After a hearing, the trial court found defendant guilty of being a multiple offender. Thereafter, defendant's original sentences were vacated and the trial court sentenced defendant as a habitual offender on each count to ten years at hard labor, without benefit of probation or suspension of sentence and with credit for time served. The sentences were ordered to run concurrently. Defendant then applied to this Court for supervisory review of his adjudication and sentencing as a second felony offender. State v. Soler, 93-KH-1020, January 25, 1994. At the time of his writ application, defendant had already appealed his convictions and sentences. This Court denied the writ, based upon defendant's "adequate remedy on appeal" and the fact that his appeal had "been lodged with this court for review...."
In his appeal, defendant urges nine assignments of error as follows:
A) The trial court erred in permitting evidence of other crimes to be presented before the jury despite the State's failure to give defendant notice of its intention to present other crimes evidence, in violation of State v. Prieur and Articles 404B and 1103 of the Louisiana Code of Evidence.
B) The trial court erred in permitting inadmissible hearsay, specifically statements of the alleged victim relating the details of the alleged physical and sexual abuse, to be introduced into evidence.
C) The trial court erred in permitting Dr. Clarence C. Haydel, Jr., to give an expert opinion that the defendant molested the victim, and further in allowing Dr. Haydel to give expert testimony supporting the credibility of the victim.
D) The trial court erred in improperly limiting the length of counsel's closing argument, which limitation left defense counsel with improper time to sufficiently argue the case.
E) The trial court erred in refusing to exercise its discretion pursuant to Code of Criminal Procedure Article 731 and allow the jury to take documentary evidence into the jury room during deliberations, after the trial court had advised defense counsel that such evidence would be provided to the jury during their deliberations.
F) The trial court erred in permitting the prosecutor to state during rebuttal argument that appellant was no longer entitled to a presumption of innocence, which statement is clearly improper under the law and should have been noted by the trial court despite the failure of appellant's trial counsel to object and move for a mistrial or admonition.
G) The trial court erred in refusing to permit appellant to present evidence in support of his Motion for New Trial, *1073 more specifically in refusing to allow appellant to make a showing concerning the newly discovered evidence alleged in the Motion for New Trial filed by his original trial counsel, and further by prohibiting appellant from presenting fact and expert witnesses demonstrating that appellant received ineffective assistance of counsel prior to and during trial.
H) The trial court erred in denying appellant's Motion for New Trial.
I) The trial court erred in adjudicating the defendant a habitual offender pursuant to R.S. 15:529.1 in that there was no indication that the jury's verdict of May 26, 1993, reflected a finding that defendant was convicted for any offenses occurring subsequent to his previous felony guilty plea of November 13, 1991.

FACTS
In September of 1990, Carolyn Daspit and her ten year old son, began living with defendant. Later, Ms. Daspit and defendant married. Beginning in the first week that they lived together, defendant physically abused his stepson by hitting, punching, kicking, and choking him. During one episode, defendant threatened the victim while holding a knife to his throat. Another time, defendant choked the victim, resulting in a rash on the victim's neck.
According to the victim's testimony, defendant also sexually abused him. Defendant exposed his own genitalia to the victim. During these incidents, defendant placed his penis about an inch or two in front of the boy's face. At times while the victim was clothed, defendant would act as if he were inserting objects, such as bananas, screwdrivers, spoons and sticks into the victim's anus. Defendant also placed objects inside of the child's underwear. Additionally, defendant would remove the victim's pants and approach him from the rear as though he were going to have anal intercourse with the victim. However, the victim denied that penetration ever occurred.
When the victim's mother was at home, defendant would pull down the boy's pants. The young boy would cry for his mother, and defendant would tell the victim to pull up his pants before his mother came in the room. The child further stated that he wrote a "contract" not to "shoot, hit, kick, threaten to kill, stab, or choke" him, which he wanted defendant to sign. Instead, defendant wrote his own "contract" promising not to "physically or mentally, cruelly or maliciously bring harm" to the victim or his mother. The young boy admitted that he enjoyed living alone with his mother and that they did more things together before defendant came to live with them. He also testified that defendant disciplined him a lot and yelled at him for not doing his chores.
At the trial, Ms. Daspit testified that although she knew of the physical abuse, she was unaware of the sexual abuse of her son until it was reported to authorities. Shortly after they began living together, she saw defendant playing with her son, who was fully clothed. Defendant threatened to place a banana in her son's rectum. However, at the time, this incident did not cause her concern and she never saw anything like that again. She also saw one incident in which defendant held a knife to her son's throat and another in which defendant choked the victim. During her testimony, Ms. Daspit claimed that she attempted to make a phone call from her home to police regarding the abuse, but defendant pulled the phone out of the socket. She did not call the police from her work location, because by the time she got to work, defendant had apologized. During cross-examination, Ms. Daspit admitted writing notes on a copy of the physician's report regarding the abuse. These notations include denials of certain incidents. However, she explained these notations were made when she was willing to do "anything to get him [her son] back [from the state's custody]." Ms. Daspit further testified that after his arrest, defendant and his mother came to her and requested that she deny that defendant had harmed her son.
Dr. Clarence Haydel, a pediatrician, was qualified as an expert in the field of pediatric medicine, with a specialty in physical and sexual abuse examinations of children. He conducted an interview and physical examination of the victim on January 29, 1992. Dr. *1074 Haydel stated the boy told him that he did not report the abuse because he was embarrassed about it. Dr. Haydel further confirmed that a rash on the victim, as described by the victim and his mother, would be consistent with choking the victim.
Dr. Haydel testified that the child told him that defendant would expose his own genitalia and fondle the victim's genitalia. Defendant would also remove the victim's pants and approach him from the rear, as though defendant were going to have anal intercourse. Once when they were alone, defendant ordered his stepson to take down his pants and underwear and expose his buttocks, while kneeling on a bed. Defendant removed his penis from his pants and threatened to insert his penis into the victim's anus. At other times, when the victim was clothed, defendant attempted to insert objects into the victim's anus. When the doctor physically examined defendant, he did not find any signs of physical or sexual abuse. However, that was consistent with the lack of penetration.
Ms. Linda Scully, defendant's mother, testified that the victim's mother told her that she did not believe the charges against defendant. However, Ms. Scully denied that she and defendant approached Ms. Daspit about denying the allegations.

CONTEMPORANEOUS OBJECTION AND INEFFECTIVE ASSISTANCE OF COUNSEL
In this appeal, defendant argues that in several of the assignments of errors there was no contemporaneous objection at the time of trial. Additionally, he contends that defendant received ineffective assistance of counsel and that one of the means constituting ineffective assistance of counsel was the defense counsel's failure to object to errors at trial.
The state, in its brief, urges that it is not necessary to address all the issues, because defendant failed to make contemporaneous objections. It further argues that defendant's ineffective assistance of counsel arguments may not be properly addressed by this court on appeal.
La.C.Cr.P. art. 841 provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection. State v. Thomas, 427 So.2d 428 (La.1982); State v. Cockerham, 442 So.2d 1257, 1260 (La.App. 5th Cir.1983).
Defendant had ample opportunity both prior to and during trial to object to the evidence presented by the State. As he failed to do so, some of the errors alleged herein have not been properly preserved for review by this court. La.C.Cr.P. art. 841; State v. Guidroz, 498 So.2d 108, 109 (La.App. 5th Cir.1986).
However, defendant also raises claims regarding ineffective assistance of counsel. At the hearing on the motion for new trial, defense counsel added the claim of ineffective assistance of counsel as one of the grounds for the motion. He argued that the verdict was contrary to the law and evidence because the defendant did not receive effective assistance of counsel. The trial court denied the motion, finding that the claim of ineffective assistance of counsel could not be raised in a motion for new trial. Rather, that court agreed with the State that those allegations should be raised in an application for post-conviction relief. The trial court also ruled that defendant could proffer evidence on the ineffective assistance of counsel claim, but the record does not show that any such evidence was introduced.
Defendant applied for supervisory writs with this Court in State v. Soler, 93-K-742, decided September 16, 1993, seeking an order to the trial court to hold an evidentiary hearing on the claim. In the central staff memorandum, the Fifth Circuit case of State v. Hudson, 570 So.2d 504 (La.App. 5th Cir. 1990), writ denied, 580 So.2d 920 (La.), cert. denied ___ U.S. ___, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991) was cited. In that case, this Court stated that "[A] motion for new trial is ... another proper vehicle for alleging *1075 ineffective assistance of counsel." Subsequently, this Court denied the writ with the following language:

WRIT DENIED.
We find no abuse of the trial judge's discretion. Relator has adequate remedy by post-conviction relief. See: State v. Hudson, 570 So.2d 504 (La.App. 5th Cir.1990).
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed by an application for post-conviction relief, filed initially in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984). Where ineffective assistance of counsel claims have been raised by assignment of error and the record discloses sufficient evidence to rule on the merits of that claim, appellate courts have addressed the merits of those claims. Herein, since we have before us the trial transcript, the record discloses sufficient evidence to rule on the merits of defendant's claim. Thus, we will consider the issues on appeal in the interest of judicial economy. See State v. Gay, 616 So.2d 1290 (La.App. 2d Cir.), writ denied 624 So.2d 1223 (La.1993).
Further, in assessing a claim of ineffective assistance of counsel a two-pronged test is employed. The defendant must show that (1) his counsel's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, the defendant must demonstrate that, but for the unprofessional conduct, the outcome of the proceedings would have been different. Therefore, the defendant must show a reasonable probability that counsel's error so undermined the proper functioning of the adversarial process that the trial court cannot be relied upon as having produced a just result. Effective counsel has been defined to mean "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render effective assistance." State v. Ratcliff, 416 So.2d 528, 531 (La.1982). Only if defendant has shown both error and prejudice will his conviction be found unreliable and set aside. See State v. Wright, 598 So.2d 493 (La.App. 2d Cir.1992). There is a strong presumption that the conduct of counsel falls within the wide range of responsible professional assistance. State v. Myers, 583 So.2d 67 (La.App. 2d Cir.), writ denied, 585 So.2d 576 (La.1991).
Because we find that the failure of defendant's trial counsel to object to alleged errors was not prejudicial error, we conclude that the ineffective assistance of counsel claim is without merit.

ASSIGNMENT OF ERROR LETTER A
The trial court erred in permitting evidence of other crimes to be presented before the jury despite the State's failure to give defendant notice of its intention to present other crimes evidence, in violation of State v. Prieur and Articles 404B and 1103 of the Louisiana Code of Evidence.

DISCUSSION
By means of this assignment of error, defendant contends that references to other crimes occurred when the state was examining the victim's mother. He argues that her testimony concerning defendant's threats against her constituted other crimes evidence. Further, defendant argues that defense counsel's failure to continue to object to this testimony, after the trial court overruled his initial objection, was ineffective assistance of counsel. He contends that despite the lack of contemporaneous objection, because he raises the claim of ineffective assistance of counsel, this assignment of error may be reviewed.
The state does not address this assignment of error because there was no contemporaneous objection at trial.
The pertinent part of the colloquy involving the testimony of the victim's mother is as follows:
Q. I'd like to show you State's Exhibit 3, previously identified as the weapon?
Is this the knife that you saw ...
A.... Yes ...
Q.... uh, James Soler with?
A. Yes.
Q. Could you please demonstrate showing me? I'm Teddy and you're James Soler. Would you please show the ladies *1076 and gentlemen of the Jury, how he had the knife?
A. He had it like this. (Demonstrating)
Q. And what was Teddy doing?
A. He was crying.
Q. And what did you do?
A. I wanted to help him, but I was afraid to.
Q. Why?
A. I was afraid he'd pull a knife on me...
Q.... Why did you ...
A.... or hurt Teddy.
Q. Why did you think that?
A. Because that's the way he is.
Q. Did he ever threaten you?
A. Yeah.
Q. Did he ever threaten you with any kind of weapon?
A. The little sling shot pellet.
Q. Okay.
MR. ZAINEY:
Judge, can we approach the bench a second?
(BENCH CONFERENCE)
COURT REPORTER:
On the record?
MR. ZAINEY:
Uh, I'm going to object, uh, based on the fact that I think this might be, what would be considered other evidence of other crimes. I've been given no Prier notice if that's a fact, what you're trying to do is saying that he was abusing her also.
MS. McELWEE:
Well, the only reason this has come out was that an issue has been made as to why she didn't report this. And this isthis is in direct response to that. She didn't report it because number 1, she was scared of him. Number 2, she didn't want to break up her family.
MR. ZAINEY:
Okay, well, if she can certainly say she didn't want to break up her family but if you're going to bring up evidence of alleged other crimes, then, you know, I'll have to object.
MS. McELWEE:
I'm trying to think ...
THE COURT:
... Um ...
MS. McELWEE:
... do you remember I've done this before. I'm sure about it.
THE COURT:
... I think.
MS McELWEE:
... Don't you remember, I've done this before, I'm sure I have ...
THE COURT:
... I think there's ... I think there's ...
MR. ZAINEY:
... 495 or something ...
THE COURT:
... other crimes is, but, this is evidence...
MS. McELWEE:
... 404(B) ...
THE COURT:
Oh, okay. No other promise is, but this is evidence and I find....
MR. ZAINEY:
I'm objecting under "State versus Prieur". Of course which predated 404(B).
THE COURT:
I know.
MS. McELWEE:
I wanna put this on the record while I can. This isthis is to rebut the argument and the his statementearlier statement that, uh, she didn't report this stuff. Now, he's going to make an issue of the fact that she didn't believe it was true.
THE COURT:
I'm gonna let her do it inin rebuttal but if we have to do it then. We will do it in rebuttal.
I thought I remember something in here that ...
MR. ZAINEY:
... Did to plan to go into it ...

*1077 THE COURT:
... said specifically that you could ...
MR. ZAINEY:
... in detail about the abuse ...
MS. McELWEE:
No ...
MR. ZAINEY:
... or just the fact that she was afraid?...
MS. McELWEE:
... No I just wantwant it in evidence that she was afraid of this guy, that he had threatened her. And that's as far as I'm going ...
MR. ZAINEY:
... See II have no problems for you to say, that she was afraid of him. But I don't know that you have to get into any threats made by him.
MS. McELWEE:
Well, I have to say why. I don't have to get into the gory details of it. I should have, but I, you know like I should have planned it that way but I didn't. And I wasn't planning to go any further because I agree, if I start getting into a lot of, uh, evidence of other crimes, then I think I am treading on a Mistrial, or a Reversal.
MR. ZAINEY:
Okay. So you're saying that she was afraid because of threats made period.
MS. McELWEE:
By him.
MR. ZAINEY:
Okay. Judge if that's it ...
MS. McELWEE:
... Unless he gets up and say otherwise...
MR. ZAINEY:
... Oh, I don't think so. Okay.
THE COURT:
Okay. Let's make it quick, okay?
MR. ZAINEY:
Okay.
Defendant also argues that the prosecutor elicited testimony from the victim to corroborate his mother's testimony about the other crimes evidence. That brief testimony is as follows:
Q. Okay. What'd he do with the phone he pulled out of the wall?
A. He would tetear it out of the wall and then throw it on the ground or stomp on it or throw it across the room?
Q. Did you ever see him threaten your mother?
A. Yes.
Q. Okay. Teddy did you ever write a contract?
A.... Yes ...
Q.... about the abuse?
A.... Yes ...
Q.... And whose idea was the contract?
A. Mine.
La.Code of Evidence art. 404(B)(1) reads as follows:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Comment (k) to this article reads as follows:
The first sentence of Paragraph B of this Article is not intended to change the law. See State v. Prieur, 277 So.2d 126 (La. 1973); Art. 1103, infra. Although the second sentence of Paragraph B contains a longer list of purposes for which evidence of other crimes is admissible than that found in former R.S. 15:445-446, it generally accords with the rules actually applied by the Louisiana courts. State v. Kahey, 436 So.2d 475 (La.1983).
The state, within a reasonable time before trial, must furnish in writing to the defendant a particularized statement of the other acts or offenses it intends to offer, specifying the exception to the general exclusionary rule upon which it intends to rely for their admissibility. The only exception to this notice *1078 requirement relates to evidence of offenses which are part of the res gestae, or are used to impeach defendant's testimony. State v. Germain, 433 So.2d 110 (La.1983); State v. Prieur, 277 So.2d 126 (La.1973).
We find that the very brief reference to the threat against the victim's mother, without more specifics and in the context of the other questions, does not constitute other crimes evidence. Further, there was no testimony or evidence of an attack or of abuse against the mother. Also, we note that trial counsel at first objected to the question, but appeared to acquiesce after argument. However, we find no error in the trial counsel's failure to continue to object to this testimony. Thus, defense counsel's performance in this regard was not deficient and did not constitute ineffective assistance of counsel.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR LETTER B
The trial court erred in permitting inadmissible hearsay, specifically statements of the alleged victim relating the details of the alleged physical and sexual abuse, to be introduced into evidence.

DISCUSSION
By means of this assignment of error, defendant contends that inadmissible hearsay evidence was improperly admitted into evidence. He further argues that defense counsel was ineffective for failure to object to the admission of this hearsay testimony.
According to defendant, the alleged inadmissible hearsay testimony occurred during the testimony of three witnesses:
1. Detective Richard Waltherthat the victim's mother told him of physical abuse against the victim and herself that the victim gave statements consistent with that of the doctor and state social worker that the victim identified one of the knives used in the abuse (R., p. 343);
2. Ms. Daspit, the victim's motherabout the contents of "contracts" prepared by her son and defendant;
3. Dr. Clarence Haydeldescriptions by the victim about his abuse.
La.C.E. art. 801C defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La.C.E. art. 802.
In State v. Watson, 449 So.2d 1321, 1328 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985), the Louisiana Supreme Court stated:
A witness is generally competent to testify that a statement was made to him so long as no attempt is made to vouch for the credibility of its contents. State v. Ford, 368 So.2d 1074 (La.1979); State v. Edwards, 406 So.2d 1331 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467. A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the investigating officer. State v. Calloway, 324 So.2d 801 (La.1976); State v. Smith, 400 So.2d 587 (La.1981); State v. Edwards, supra.
In State v. Williams, 591 So.2d 404 (La. App. 4th Cir.1991), the court held that a police officer's testimony as to what he had been told by third parties regarding a robbery was not inadmissible hearsay, where the testimony was purely introductory and explanatory as to why, where and how he pursued and subsequently arrested defendant.
Thus, Detective Walther's testimony was admitted to explain the events leading to defendant's arrest. Even assuming, arguendo, that Walther's testimony, recounting the statements of the victim and his mother, constituted hearsay, that testimony was cumulative and corroborative of the victim's testimony. Therefore, its erroneous admission into evidence was harmless. See State v. Byrd, 540 So.2d 1110 (La.App. 1st Cir.), writ denied 546 So.2d 169 (La.1989).
The testimony about the victim's "contract," was related to the questions about the "contract" which defendant wrote *1079 promising not to abuse his stepson. It was not to prove the truth of the matter asserted, the contents of the document. Thus, it is not hearsay.
Even assuming that this testimony was offered to prove the truth of the matter asserted and, thus, constituting hearsay, it's admission is harmless. The contract itself was admitted into evidence as State Exhibit Number 5.
During the doctor's testimony on direct examination, he testified about the victim's descriptions of the physical and sexual abuse. Further, on cross-examination, the defense counsel also questioned Dr. Haydel about the statements that the victim made to him about the abuse. Moreover, the doctor's report was introduced during the trial.
La.Code of Evidence article 803(4) is as follows:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
(4) Statements for purposes of medical treatment and medical diagnosis in connection with treatment. Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause of external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.
(3) Since under Article 703 an expert witness may base his opinion on inadmissible evidence provided it is of "a type reasonably relied upon by experts" in the particular field in question in forming the opinion, problems are presented relative to the expert's relating same to the trier of facts. Because of the constitutional right of confrontation the problem is more acute in criminal cases (see 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 705[01] and hence Article 705(B) precludes an expert witness, on direct examination, from relating inadmissible evidence that may have formed the basis for his opinion. To protect the opponent in such cases, the cross-examiner is permitted to go into such matter. Although Article 705(B) does not so specify, fairness requires that to the extent the cross-examiner has gone into such inadmissible evidence, the proponent of the testimony may also inquiry into it on redirect, and Article 611(D) so indicates.
The testimony of Dr. Haydel, who examined the victim for the purpose of determining the validity of the abuse allegations, not for treatment purposes, contained hearsay evidence of the victim's statements to the doctor. However, defense counsel questioned the doctor about the victim's statements during his cross-examination of the witness. Defendant's trial counsel elicited testimony about the victim's descriptions of the abuse and used this as a method to impeach the victim's trial testimony. Thus, although hearsay testimony was elicited, we find this error to be harmless.
Furthermore, we cannot say that defendant's trial counsel's performance was deficient. Apparently, counsel consciously allowed this evidence to be admitted as part of defendant's defense strategy. Thus, the ineffective assistance of counsel claim lacks merit.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR LETTER C
The trial court erred in permitting Dr. Clarence C. Haydel, Jr., to give an expert opinion that the defendant molested the victim, and further in allowing Dr. Haydel to give expert testimony supporting the credibility of the victim.

DISCUSSION
By means of this assignment of error, defendant contends that the examining physician's opinion testimony about the truthfulness of the abuse allegations was improper and required a reversal of this conviction. Dr. Clarence Haydel, Jr., who was qualified as an expert was asked by the assistant district attorney if, in his opinion, the acts described by the victim constituted molestation. The doctor replied, "Yes." The doctor *1080 also stated that his purpose of interviewing and examining the victim was to form an opinion as to whether or not the allegations are true. Here again, defendant notes that the defense counsel made no objection to the expert's opinion.
The purpose of an expert witness, particularly in criminal cases, is to provide the jurors with a basis of knowledge and background information on a subject. The jury's role is that of ultimate fact finder: the jurors relate background knowledge from the expert to the facts established by evidence at trial and make a determination of the defendant's guilt. State v. Gray, 533 So.2d 1242 (La.App. 4th Cir.1988), writ denied 546 So.2d 1209 (La.1989); State v. Lard, 459 So.2d 1189 (La.App. 4th Cir.1984), writ denied 464 So.2d 1376 (La.1985).
Comment (c) to Article 704 of the Louisiana Code of Evidence states:
(c) Under this Article the fact that an opinion or inference embraces an ultimate issue in a case does not preclude admissibility. The law continues, however, to prefer the more concrete to the less concrete, and as the subject matter of an opinion approaches an ultimate issue the presentation of the more concrete becomes more helpful, and conclusory testimony generally less so. This Article is thus in harmony with the views expressed by the Louisiana Supreme Court in State v. Wheeler, 416 So.2d 78 (La.1982), discussed in Pugh & McClelland, "Developments in the Law, 1982-1983, Evidence," 44 La.L.Rev. 344 (1983) which should continue to control.
When an expert testifies, the reluctance to admit opinion testimony is relaxed. State v. Wheeler, 416 So.2d 78 (La.1982). However, courts will exclude "extreme expressions", even by experts, on matters such as how the case should be decided or whether the defendant is guilty. La.Code of Evid. art. 704. Various factors weigh heavily against the admission of this type of testimony including, 1) the evidence is not truly expert testimony because it relates to a matter well within the jury's understanding and does not aid the jury in reaching a decision; 2) the opinion is abstract and indirect; and 3) it relates to an ultimate issue instead of a collateral matter. State v. Wheeler, supra.
Applying these factors in the instant case, Dr. Haydel's statement was not an opinion on how the case should be resolved or whether Soler was guilty. Dr. Haydel's expert medical testimony aided and enlightened the jury in the area of physical and sexual child abuse, an area which is beyond the understanding of the average lay person, and assisted the jury in its search for the truth. State v. Patrick, 513 So.2d 449 (La. App. 2nd Cir.1987), writ denied 519 So.2d 140 (La.1988).
The doctor did not express an opinion on defendant's guilt; he merely stated that the acts described by the child constituted molestation. The jurors were free to form their own opinion as to whether to believe the child's allegations and whether defendant was the person who had abused the child, assuming they accepted Haydel's opinion. The instant case is distinguishable from State v. Wheeler, supra, in which the expert testimony of policemen was tantamount to giving an opinion on the defendant's guilt with respect to drug charges. The doctor's statement, while it may approach the outer limits of acceptable opinion testimony, was not erroneously admitted into evidence. See State v. Gray, supra.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR LETTER D
The trial court erred in improperly limiting the length of counsel's closing argument, which limitation left defense counsel with improper time to sufficiently argue the case.

DISCUSSION
By means of this assignment of error, defendant contends that "the time limitation [during closing argument] imposed upon defense counsel left him with insufficient time to properly argue defendant's case." He concedes that the record does not reflect the actual time allotted for the closing argument, but contends that defense counsel made a hurried argument and failed to argue the strongest evidence in favor of acquittal. Further, he contends that the failure to raise an objection to the court's limitation of argument *1081 constituted ineffective assistance of counsel.
All matters pertaining to the conduct of the trial are within the sound discretion of the trial judge. La. Const.Art. 5, Section 1; La.C.Cr.P. art. 17; State v. Kirkpatrick, 443 So.2d 546, 557 (La.1983), cert denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984); State v. Galloway, 551 So.2d 701 (La.App. 1st Cir.1989).
A trial judge has broad discretion and the duty "to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done." La.C.Cr.P. art. 17. The judge must therefore "be and is given great latitude in controlling the duration and limiting the scope of closing summations." Herring v. New York, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); State v. Washington, 614 So.2d 711 (La.1993); State v. Reeves, 263 La. 923, 269 So.2d 815 (La.1972); State v. Pierfax, 158 La. 927, 105 So. 16 (La.1925);
Defendant cites as authority, State v. Washington, supra, in which the Louisiana Supreme Court held that the trial court's fifteen minute time limitation, "which overshadowed and dominated the arguments of state and the defense without any apparent necessity in the record, represented an abuse of the court's discretion." State v. Washington, 614 So.2d at 713-714. However, in this case, it appears from the record that the closing arguments were not limited to fifteen minutes. Additionally, from our review of defense counsel's closing argument, we find that he was able to adequately cover the issues and argue the evidence.
Thus, defense counsel's failure to object to this time limitation was not deficient performance. Therefore, this failure was not ineffective assistance of counsel.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR LETTER E
The trial court erred in refusing to exercise its discretion pursuant to Code of Criminal Procedure Article 793 and allow the jury to take documentary evidence into the jury room during deliberations, after the trial court had advised defense counsel that such evidence would be provided to the jury during their deliberations.

DISCUSSION
By means of this assignment of error, defendant contends that the trial court's failure to allow the doctor's report to be reviewed by the jury during its deliberations was an abuse of discretion. Specifically, he argues that defense counsel was "misled by the court's statement during closing argument that it would allow the jury to consult these documents...." The state argues that the jury may not review written evidence during deliberations.
Defendant contends that during the state's closing argument, the prosecutor implied that defendant was "careful not to strike the victim in the face since such abuse might be readily detected outside the home." Defense counsel objected that the prosecutor's argument was not a truthful statement of the evidence, because the doctor's report states the victim was struck in the face. The prosecutor stated that the jury could read the report and the trial court stated, "Okay. I'll allow them to have it." However, after the jury requested the documentary evidence, the trial court refused to allow the jury to have the doctor's report.
The general rule as expressed by La.C.Cr.P. art. 793 is that the jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document. For example, a jury can examine a written statement to ascertain or compare the signature, or to see or feel it with regard to its actual existence. State v. Perkins, 423 So.2d 1103, 1109-1110 (La.1982).
The only purpose of the jury's examination of the doctor's report would have been to read the verbal contents of the document, not a physical examination of the document itself. Thus, the trial court properly denied the jury's request to review the doctor's statement. Further, we note it appears from the record that the jury was allowed *1082 sufficient time during the trial to review this document.
Thus, this assignment of error lacks merit.

ASSIGNMENT OF ERROR LETTER F
The trial court erred in permitting the prosecutor to state during rebuttal argument that appellant was no longer entitled to a presumption of innocence, which statement is clearly improper under the law and should have been noted by the trial court despite the failure of appellant's trial counsel to object and move for a mistrial or admonition.

DISCUSSION
By means of this assignment of error, defendant contends that the prosecutor made prejudicial remarks about the presumption of innocence during her closing argument. The state does not argue this assignment, because there was no contemporaneous objection to this alleged error.
During rebuttal argument by the state, the prosecutor stated:
[MS. McELWEE:]
Now, Mr. Zainey wants to start talking about, uh, about this man being presumed innocentthe the first thing he says when he gets up to you. Well, guess what? That was before you heard the evidence. I want you to take a good look at James Edwin Soler because he's no longer presumed innocent. You have heard the evidence in this case. He's no longer presumed innocent.
The scope of the closing argument is limited to the evidence admitted, the lack of evidence, conclusions of fact drawn therefrom, and the law applicable to the case. La.Code of Criminal Procedure article 774. The prohibition against personal remarks by the district attorney is based on the belief that the jury may give greater weight to these observations than the actual evidence. Nevertheless, the expression of such an opinion by the prosecutor is often held to be non-reversible error, if it is apparent to the jury that it is expressly or impliedly based only on the evidence presented to the jury rather than on personal knowledge of facts outside the record. State v. Montgomery, 432 So.2d 340 (La.App. 1st Cir.1983). Before reversing a jury verdict because of a prosecutor's closing remarks, however, the appellate court must be convinced the objectionable statements were so inflammatory or prejudicial that they influenced or contributed to the guilty verdict. State v. DiLosa, 529 So.2d 14, 19 (La.App. 5th Cir.1988), writ denied 538 So.2d 1010 (La.1989); State v. Horton, 476 So.2d 9 (La.App. 5th Cir.) writ denied, 478 So.2d 144 (La.1985).
In this case it appears that the prosecutor's argument was related to the evidence presented and that the state had carried its burden of proof. Thus, we do not conclude the remarks were erroneous. Furthermore, we are not convinced that the remarks, if prejudicial, contributed to the jury's verdict.
Thus, this assignment of error lacks merit.

ASSIGNMENT OF ERROR LETTERS G AND H
The trial court erred in refusing to permit appellant to present evidence in support of his Motion for New Trial, more specifically in refusing to allow appellant to make a showing concerning the newly discovered evidence alleged in the Motion for New Trial filed by his original trial counsel, and further by prohibiting appellant from presenting fact and expert witnesses demonstrating that appellant received ineffective assistance of counsel prior to and during trial.
The trial court erred in denying appellant's Motion for New Trial.

DISCUSSION
By means of these assignment of error, defendant contends that the trial court's denial of his motion for new trial, without allowing evidence, was erroneous. Specifically, defendant contends that his original motion alleged numerous grounds, including "that defendant had been administered a polygraph examination which indicated that he was truthful when he denied the charges; that the jury had been denied the opportunity to review the doctor's report; and that defendant was prejudiced by the admission of other crimes evidence in violation of State v. Prieur." He also refers to the ineffective assistance of counsel claim.
*1083 However, in his brief, defendant's argument appears to relate only to the failure to hold an evidentiary hearing on the ineffectiveness of counsel claim. In his argument, appellate counsel refers to his "Memorandum in Support of Defendants' [sic] Motion for New Trial." He also lists nine specific grounds for his ineffective counsel claim. Some of these relate to trial counsel's failure to object; others are about trial counsel's failure to properly investigate the offenses and prepare a defense. In this appeal, we have addressed the grounds regarding the trial counsel's failure to raise objections during the trial and have found them to lack merit. However, as to the other grounds, defendant must first present these to the district court by means of a timely filed application for post conviction relief.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR LETTER I
The trial court erred in adjudicating the defendant a habitual offender pursuant to R.S. 15:529.1 in that there was no indication that the jury's verdict of May 26, 1993, reflected a finding that defendant was convicted for any offenses occurring subsequent to his previous felony guilty plea of November 13, 1991.

DISCUSSION
By means of this assignment of error number, defendant contends that there was insufficient evidence that the offenses for which defendant was being multiple billed occurred after the conviction for the predicate offense. Specifically, defendant contends that there was no evidence that the offenses, alleged in the bill of information to have occurred between January of 1991 and January of 1992, actually occurred subsequent to the predicate conviction, which was on November 13, 1991. The State cites the trial court's comments at the multiple offender hearing and argues that that ruling was dispositive of the matter.
The pertinent part of the colloquy at the multiple offender hearing is at R, pp. 762, line 10 through pp. 777, line 10. The trial court's ruling is as follows:
THE COURT:
All right, I believe at this point in time, since I did sit through the trial, I'm familiar with it; that the State has met its burden in the Habitual Offender Law, that acts were committed after the guilty plea in the original charge, which was 11-13-91. The bill itself reads until 1-20-92. This Court's remembrance of this trial is that that date was in there was a specific reason. I can't remember for sure whether it was when he moved out or whatever, but it was very clear in this child's mind that these things continued; in these continuing offenses, there's always some kind of question raised by the defendant, because there's no dates given. This Court certainly expects no dates given from children in these kinds of cases, and I believe it's the understanding, also, of the Supreme Court of this State that that is not required. It is a continuing offense. This child indicated that it was a continuing offense during the period of the trial. This Court feels that the State has met its burden in proving its multiple offender. I am going to find Mr. Soler a multiple offender, based upon the evidence that was submitted today. Do you want sentencing set today or do you want it set later?
MR. BOOTH:
May I ask the Court, which evidence, specifically, did the Court consider in determining that an offense committed subsequent to November 13, 1991?
THE COURT:
The fact that the bill indicates that, the fact that this Court's remembrance of this child's testimony was that this occurred up and until the last date of the Bill of Information. It was continuing. It went on regularly. The indecent behavior, as well as the cruelty, all occurred up until the very end. This child, in my remembrances, was specific about that. I'm not going to cite you pages and numbers, but just what some of the pages that Ms. McElwee read are some of the things that I remember as a result of this childthis child's testimony. I also will point out for the record that he was a most believable witness.
*1084 La.R.S. 15:529.1D(1) provides in pertinent part:
D. (1) If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction.....
In State of Louisiana ex rel. Mims v. Butler, 601 So.2d 649, 650 (La.1991) on reh., the Louisiana Supreme Court stated as follows:
After further study, we find that R.S. 15:529.1 as amended by Act 688 of 1982 is vague and ambiguous. We conclude, therefore, that the amended habitual offender statute should be strictly construed and, moreover, that the doctrine of lenity requires this strict construction of the statute most favorable to the accused. As we interpret the statute, the sequential requirement for enhanced penalties in the sentencing of multiple offenders survives. The cornerstone of that scheme is that felons graduate to second offender status, not by committing multiple crimes, but by committing a crime or crimes after having been convicted.
Thus, the instant offenses must have occurred after defendant's predicate conviction on November 13, 1991. However, the bill of information for the instant offenses alleged they occurred between January, 1991 and January, 1992. The jury convicted defendant of the crimes which the state alleged occurred until January 1992. Therefore, it would be proper to find that the offenses, although ongoing for at least one year, occurred after defendant's 1991 predicate conviction. This assignment of error lacks merit.
We have reviewed the record for errors patent and find none that constitute reversible error.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.