731 So.2d 368 (1999)
STATE of Louisiana
v.
Jason BONNET.
No. 98-KA-1014.
Court of Appeal of Louisiana, Fifth Circuit.
February 23, 1999.
*369 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Donald R. Rowan, Jr., Assistant Dist. Attys., Gretna, LA, for Plaintiff-Appellee.
Martin E. Regan, Jr., New Orleans, LA, for Defendant-Appellant.
*370 Adam S. Cohen, New Orleans, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and THOMAS F. DALEY.
DUFRESNE, Judge.
The Jefferson Parish District Attorney filed a bill of information charging the defendant, Jason Bonnet, with one count of possession of an unregistered firearm, in violation of LSA-R.S. 40:1785. Following a trial, the six person jury found the defendant guilty as charged. As a result of this conviction, the judge subsequently sentenced the defendant to three years imprisonment at hard labor.
In the meantime, the district attorney filed a bill of information seeking to have the defendant adjudicated a second felony offender pursuant to the provisions of LSA-R.S. 15:529.1. Following the defendant's admission to the allegations contained in the multiple offender bill, the trial judge vacated the defendant's original sentence and imposed an enhanced sentence of three years imprisonment at hard labor.
The defendant now appeals.

FACTS
At approximately 3:25 a.m. on October 10, 1997, Officer Ferrell was patrolling a high crime and drug trafficking area on the Westbank of Jefferson Parish. While on patrol, the officer noticed a small blue vehicle parked in the rear of the Shell station at the corner of Ames Boulevard and the Westbank Expressway. Officer Ferrell observed a white male, later identified as Malcolm Desselle[1], exit the vehicle, approach the front of the gas station, speak with several other people standing in front of the gas station, and then walk back to his blue vehicle. Thinking that a drug transaction was about to occur, Officer Ferrell drove towards the blue car, with the intent to interview Desselle. As Officer Ferrell pulled his police unit next to the blue vehicle, the defendant exited the car and joined Desselle who was standing outside. Upon approaching the small blue vehicle, Officer Ferrell observed a large handgun, in plain view, between the driver and the passenger side of the seat.
To ensure his safety, Officer Ferrell ordered both the defendant and Desselle to walk to the front of the blue vehicle. The officer then reached through the open window on the driver's side and retrieved the gun which was loaded with a clip. In the process of retrieving the gun, the officer saw what appeared to be a silencer sticking out of a duffle bag that was lying on the back seat of the vehicle. Officer Ferrell testified that as he seized the gun, Desselle advised him that "somebody threw it in the car because it wasn't his." Officer Ferrell never determined who owned the duffle bag. At trial, Officer Ferrell testified that State Exhibit Number One resembled the gun that he seized from the vehicle.
The officers subsequently interviewed both the defendant and Desselle. Detective Berggren, who assisted in the interviews, testified that after the defendant was advised of and waived his rights, he told the officers that he was sitting in the vehicle that evening and that some black guys threw the gun through the vehicle's open window. However, Officer Berggren also testified that Desselle told him that the defendant had purchased the gun from a black man.
There was further testimony at trial by Agent Veal of the Bureau of Alcohol, Tobacco and Firearms. According to Agent Veal, he was contacted by the Jefferson Parish Sheriff's Office and thereafter performed a field test on the weapon in question. *371 The agent testified that the gun was fully automatic and also that the gun was not registered. He testified that State Exhibit Number One appeared to be the weapon that he tested.
Agent Veal also obtained statements from the defendant after advising him of his rights. In his initial statement, the defendant denied knowing anything about the weapon. However, in his second statement, the defendant told the agent that he thought that some black men threw the weapon into the vehicle. Finally, the defendant told the agent that the weapon might have belonged to Desselle.
After the testimony of these officers, defense counsel presented the testimony of two witnesses in an attempt to show that the gun belonged to Desselle. Mr. Kenneth Plaisance testified that Desselle had asked him to keep a gun for him. However, Mr. Plaisance further testified that he returned the gun to Desselle the following day because he began to worry about what would happen to his family if it were found by the police in their house. Mr. Plaisance identified State Exhibit Number One as the weapon that Desselle had given him to keep. Malcolm Desselle also testified as a defense witness. At one point during his testimony, Desselle claimed that the police recovered the gun from his baggage which was in the trunk of his car. Desselle testified that he had one duffle bag on the back seat of his car and one duffle bag in the trunk of his car, but that he did not know from which duffle bag the police recovered the gun. Desselle later testified that he did not know to whom the gun belonged, and that the police found the gun "up under my seat." He denied that he had asked Mr. Plaisance to keep the gun for him, and in fact, denied ever possessing the gun. During his testimony, Desselle admitted that he had given a statement to the police, in which he said that "some black guys must have thrown it in the car."

DENIAL OF MOTION FOR NEW TRIAL
In his first assignment of error, the defendant argues that the trial court abused its discretion in denying his motion for new trial. Based on the discussion which follows, we find no merit to this argument.
In the present case, the defendant filed a motion pursuant to LSA-C.Cr.P. art. 851, alleging that he was entitled to a new trial based on newly discovered evidence that defense counsel, Adam Samuel Cohen, was ineligible to practice law since 1995 and was suspended from the practice of law by the Louisiana Supreme Court on March 27, 1998. After conducting a hearing, the trial court denied the motion for new trial on the basis that Mr. Cohen was in fact a licensed attorney at the time of the defendant's trial and was not suspended until after the trial.
Pursuant to LSA-C.Cr.P. art. 851, the motion for new trial is based upon the supposition that injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the new trial is grounded. The ruling on a motion for new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only when there is a clear showing of abuse of that discretion. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212.
In the present case, the record supports the trial judge's determination. While Mr. Cohen was suspended from the practice of law for three years, this suspension was not ordered until after trial in the current matter. The trial occurred on February 19, 1998; the defendant was sentenced on March 25, 1998; and Mr. Cohen was suspended on March 27, 1998. See In re Cohen, 98-0291 (La.3/27/98), 708 So.2d 415. Thus, Mr. Cohen was eligible to practice law when the trial took place. We take note of the defendant's allegations that Mr. Cohen was ineligible to practice law since 1995. The transcript indicates that *372 he is referring to instances where Mr. Cohen was temporarily ineligible to practice law for failing to pay membership dues or comply with continuing legal education requirements. However, there was no evidence introduced to support the defendant's argument that his trial attorney was ineligible to practice law at the time of his trial. Thus, we find that the trial judge did not err in denying the defendant's motion for new trial.

INEFFECTIVE ASSISTANCE OF COUNSEL
In his second assignment of error, the defendant alleges that he was denied his constitutional right to effective assistance of counsel. The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel generally is most appropriately addressed through an application for post conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987). It is well settled, however, that where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, the appellate court may consider the issue in the interests of judicial economy. State v. Peart, 621 So.2d 780 (La.1993); State v. Junior, 542 So.2d 23 (La.App. 5 Cir.1989). The instant record contains sufficient evidence to decide the ineffectiveness issue, and accordingly we will address the defendant's allegations.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. To show prejudice as required in order to establish ineffective assistance of counsel, the defendant must demonstrate that but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055.
Effective counsel has been defined to mean "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." State v. Ratcliff, 416 So.2d 528 (La.1982). There is a strong presumption that the conduct of counsel falls within the wide range of responsible professional assistance. State v. Soler, supra. We will now address each of the defendant's allegations of ineffective assistance.
The defendant complains that his trial attorney was ineffective because he failed to adequately investigate the case or prepare for trial. He claims that counsel's failure to investigate or prepare is evidenced by his waiver of an opening statement until after the state had rested. In addition, the defendant complains that his attorney did not state what he intended to prove, because he was not prepared for trial, and did not know what he intended to prove. These allegations are not supported by the record.
In the present case, the defendant's trial attorney did make an opening statement, and he did state that he intended to prove that the evidence against the original codefendant, Malcolm Desselle, was stronger than the evidence against his client. The defendant's trial attorney clearly explained to the jury that the defense theory was that Desselle, and not the defendant, was in possession of the unregistered weapon. Therefore, the defendant has failed to demonstrate that his trial attorney's opening statement was deficient, and, therefore, has failed to satisfy the first prong of the test for ineffectiveness of counsel.
*373 The defendant also complains that counsel's lack of preparation is evidenced by his failure to speak with Mr. Plaisance and Mr. Desselle prior to calling them to testify as defense witnesses. With respect to counsel's failure to speak with Desselle, it is noted that he was a co-defendant in this case until February 17, 1998, just two days prior to the defendant's trial. Moreover, the record indicates that Desselle was not a cooperative witness, that he did not voluntarily appear in court, and that defense counsel had to obtain an instanter subpoena to compel Desselle's appearance at trial. Given these circumstances, the defendant has not shown that counsel's performance was defective in failing to interview Desselle prior to trial.
Furthermore, although the record reflects that the defendant's trial attorney did not speak with Mr. Plaisance until the evening prior to the defendant's trial, the defendant has not demonstrated that his trial attorney's performance was deficient on this basis. During the defendant's trial, Mr. Plaisance's testimony supported the defense theory that the weapon was in the possession of Desselle. Therefore, the defendant has failed to demonstrate that his trial attorney's failure to speak with Mr. Plaisance prior to the evening before his trial amounted to ineffective assistance of counsel.
In addition to complaining about counsel's preparation and investigation for trial, the defendant also complains about certain aspects of counsel's performance during the trial. The defendant specifically alleges that he received ineffective assistance because, during cross-examination of the officers, his trial attorney elicited information that the arrests of the defendant and Desselle occurred at 3:25 a.m. on October 10, 1997. There has been no showing made as to how the elicitation of this testimony amounted to deficient performance or how it in any way prejudiced the defendant. The fact that the arrests occurred at 3:25 a.m. in no way implicates the defendant's guilt or innocence in relation to the charged offense. Moreover the police report, which included this information, was admitted into evidence. Therefore, the defendant has failed to demonstrate that his trial attorney's performance was deficient based upon this complaint.
The defendant also complains that his trial attorney was ineffective for failing to object to the introduction of other crimes evidence elicited during the district attorney's cross-examination of Mr. Desselle. Specifically, trial counsel failed to object to this witness' testimony that the defendant had a "bad record."
Even assuming that counsel's failure to object to this testimony constituted deficient performance, we cannot say that but for the failure to object to this testimony, the outcome of the defendant's trial would have been different. Officer Ferrell testified unequivocally that, upon approaching the vehicle that the defendant had just exited, he observed a large handgun between the driver and the passenger side of the seat. Therefore, the defendant has failed to demonstrate that he was prejudiced by his attorney's failure to object to this witness' testimony, and has similarly failed to demonstrate that he was prejudiced by the subsequent failure to request either an admonition or a mistrial based upon such testimony.
Finally, the defendant contends that his trial attorney was ineffective because, during redirect examination of Malcolm Desselle, he returned to an issue which he had objected to as inadmissible hearsay during the district attorney's cross-examination. Specifically, during the district attorney's cross-examination, he questioned Desselle about a conversation that he had with Mona Chaisson. The trial judge had overruled a defense objection regarding the fact that Ms. Chaisson had seen the weapon in the shed behind her house, but then sustained a defense objection to Desselle's testimony that Ms. Chaisson said that the defendant brought the gun there. During defense counsel's *374 redirect examination of Desselle, he brought up the issue of his conversation with Ms. Chaisson; however, counsel did not elicit any information linking the defendant with the weapon that she allegedly saw in the shed behind her house. Given these circumstances, we are not prepared to say that counsel's performance was deficient.
In sum, we have considered all the allegations of ineffective assistance of counsel raised by the defendant. Based on our review of the record, we find that the defendant failed to show that counsel's performance was deficient and that the deficient performance prejudiced him. Accordingly, we reject the claims of ineffectiveness raised by the defendant in this assignment of error.

SUFFICIENCY OF THE EVIDENCE
In his third assigned error, the defendant challenges the sufficiency of the evidence used to convict him. To support this argument, the defendant points to the conflicting testimony given at trial as well as Mr. Desselle's testimony that the police found the gun underneath his seat.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Guccione, 96-1049 (La.App. 5 Cir. 4/29/97), 694 So.2d 1060, writ denied, 97-2151 (La.3/13/98), 712 So.2d 869.
In the present case, the defendant was convicted of LSA-R.S.40:1785, which provides that "[n]o person shall receive, possess, carry, conceal, buy, sell, or transport any firearm which has not been registeredor transferred in accordance with this Part." LSA-R.S. 40:1785 does not make actual possession a necessary element of the offense. Proof by circumstantial evidence of constructive possession of an illegal firearm satisfies the statute. State v. Wise, 434 So.2d 1308 (La.App. 3 Cir.1983). Constructive possession exists when the firearm is subject to the defendant's dominion and control, even if it is only temporary in nature and even if control is shared. However, mere presence in an area where a firearm is found, or mere association with an individual found to be in possession of a firearm, does not necessarily establish possession. State v. Martin, 483 So.2d 1223 (La.App. 4 Cir.1986); State v. LaMothe, 97-1113 (La.App. 5 Cir. 6/30/98), 715 So.2d 708.
In the present case, we have reviewed the evidence and find it to be sufficient to sustain the defendant's conviction of possession of an unregistered firearm. Officer Ferrell testified that upon approaching the vehicle that the defendant had just exited, he observed a large handgun between the driver and the passenger side of the seat. He explained that the gun was in plain view, as he was able to see it by looking through the window on the drivers' side of the vehicle. As such, the gun was within the dominion and control of the defendant, who was previously sitting in the passenger seat of the car and, therefore, the jury could have concluded that the defendant was in constructive possession of the unregistered gun.
*375 Although Mr. Desselle initially testified that the police recovered the gun from his baggage, which he claimed was in the trunk of his car, and later testified that the police found the gun under his seat, the jury apparently believed Officer Ferrell's testimony regarding the location of the weapon. It is not the function of the appellate court to assess the credibility of witnesses or to reweigh the evidence. State v. Rosiere, supra. Therefore, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the defendant was in constructive possession of the unregistered weapon. Accordingly, we reject the arguments raised by defendant in this assignment of error.

ERRORS PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Such a review reveals no errors which require corrective action.
For the reasons set forth herein, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] Malcolm Desselle was an original co-defendant in this case. He was charged by bill of information with one count of possession of an unregistered firearm and one count of possession of a controlled dangerous substance. However, the district attorney dismissed the charges against Desselle approximately two days before the defendant's trial.