(105 So. 16)

No. 27167.

### STATE v. PIERFAX.

(May 25, 1925. Rehearing Denied June 22, 1925.)

*(Syllabus by Editorial Staff.)*

**1. Criminal law ⬤➡693—Admission of testimony, cannot be complained of where not objected to until after its admission.**

Defendant cannot complain that ruling admitting testimony, afterwards excluded, deprived him of right to have jury retired while *it was being heard*, where *no objection thereto* was interposed until after witness had testified to all facts within his knowledge.

**2. Criminal law ⬤➡365(2)—Testimony, as to assault by defendant on third party, held properly admitted as part of res gestæ.**

In homicide prosecution, where assault on third party was beginning of trouble and led directly to commission of homicide, it was admissible as a part of res gestæ.

**3. Homicide ⬤➡207—Dying declaration made under sense of impending dissolution admissible, though elicited by questions.**

If a dying declaration is made under sense of impending dissolution, it is immaterial to whom it may have been made or what words deceased employed to express himself, nor is it necessary that it be voluntary, but it is admissible, even though elicited by questions.

**4. Homicide ⬤➡203(3)—Dying declaration held properly admitted.**

Where deceased, a few minutes after being shot, stated that he was shot to death; he was gone; he was ended, and died about a half hour thereafter, his dying declaration was properly admitted.

**5. Criminal law ⬤➡1170½(1) — Exclusion of evidence harmless, where similar question thereafter answered in negative.**

Refusal to permit defendant to ask witness a question *held* harmless, where question was

thereafter practically repeated and witness answered it in negative.

**6. Criminal law ⬤➡1163(1)—No reversal for erroneous ruling in absence of resultant injury or prejudice.**

Erroneous ruling of trial judge will not warrant reversal, in absence of some showing of resultant injury or prejudice.

**7. Criminal law ⬤➡711, 1154—Time for argument within trial judge's discretion and not reviewed in absence of abuse.**

Time to be allowed for argument is within sound discretion of presiding judge, and will not be reviewed in absence of apparent abuse of such discretion, or arbitrary exercise thereof.

Appeal from Thirteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Sidney Pierfax was convicted of manslaughter, and he appeals. Affirmed.

L. Austin Fontenot, of Opelousas, for appellant.

Percy Saint, Atty. Gen., R. Lee Garland, Dist. Atty., of Opelousas, Percy T. Ogden, Asst. Atty. Gen. (J. Bernard Cocke, of New Orleans, of counsel), for the State.

BRUNOT, J. The defendant and appellant was charged with murder. He was indicted and prosecuted for that crime, and the trial resulted in a verdict of "guilty of manslaughter." He was sentenced, under this verdict, to not less than 5 nor more than 10 years' imprisonment in the state penitentiary. From this verdict and sentence, he has appealed.

There are five bills of exception in the record. Bill No. 2 is subdivided into bills A and B.

The first bill was reserved to the overruling of defendant's objection to admitting the testimony of witness John Plumbar, and to the court's subsequent ruling sustaining the objection to this testimony and instructing the jury to disregard it. As the third bill of exceptions relates to the same subject-matter and was reserved to the court's ruling

admitting this testimony, at a later stage of the trial, the two bills may be considered together.

The record discloses that John Plumbar was the first witness called by the state; that the homicide was committed at a ball or dance. The witness was at the ball. The substance of his testimony is, that he saw the deceased and the defendant in the ball-room. The witness was standing on the gallery scraping some candy off of his coat. The defendant walked out on the gallery, stepped on the feet of witness, and, when cautioned by witness not to step on his feet, grabbed witness, remarked that he was the bully of the wheat field, struck witness in the face, knocked him down, and kicked him in the side. Witness then jumped up, ran away from the scene and knew nothing of the homicide which followed. This testimony went to the jury without objection. It was at this time counsel objected to the testimony, and asked the district attorney to announce the purpose of the offering. The state's reply was that the testimony was offered as a part of the res gestæ. The court thereupon overruled the objection, and the stenographer was called to take down the testimony in order that it might be attached to the bill of exceptions. After the testimony had been repeated and taken down by the stenographer, the judge concluded that the incident related had not been connected with the offense charged, and was, therefore, not a part of the res gestæ. He therefore recalled his former ruling, sustained the objection of defendant, and instructed the jury to disregard the testimony. Counsel for defendant then obtained leave of court, and cross-examined the witness, at length. It is upon this statement of facts that bill No. 1 rests.

[1] Counsel for defendant complains that the testimony of John Plumbar was irrelevant; that it tended to prejudice the minds of the jury and the court; and that the court's first ruling, upon his objection to that testimony, deprived him of the right to have the jury retired while it was being heard. We can see no merit in this contention. The witness was permitted to testify, without objection, to all facts within his knowledge. It was at this stage of the examination of the witness that counsel interposed the objection. The testimony was at that time before the jury. The court overruled the objection, and the examination proceeded, as follows:

"Q. That was the night Gus Thomas was killed? (Objected to as leading. Objection sustained.)

"Q. What happened there that night? Anybody get killed? A. I never did see him.

"Q. Do you know whether anybody got killed? A. I didn't see anybody get killed.

"Q. How long did you stay there after that? A. I didn't stay there no time."

[2] When the foregoing answers were given, the court halted the examination, sustained the defendant's objection, and instructed the jury to disregard the testimony of the witness. The state called other witnesses to the stand to establish the homicide and defendant's criminal responsibility for it, and thereafter recalled witness John Plumbar. The court, over the objection of counsel, admitted the testimony of this witness as a part of the res gestæ, and to this ruling bill No. 3 was reserved. The testimony which the state offered, in the interim between the withdrawal and recall of witness John Plumbar, was, in substance, that immediately after knocking John Plumbar down and kicking him in the side, defendant re-entered the ballroom. At this moment, Gus Thomas, the deceased, ran to the ballroom door, and asked, with a vulgar epithet, who knocked Plumbar down. The defendant turned around, drew a pistol from his bosom, and fired the fatal shot. After this testimony was introduced, it was evident that the knocking down of John Plumbar was the beginning of the trouble; it led, im-

158 LA.—30

mediately and directly, to the commission of the homicide, and it was therefore a part of the res gestæ. When this showing was made the court was correct in reversing its former ruling and admitting the testimony.

Bill No. 2 is subdivided into A and B. A was reserved to the exclusion by the court of a question propounded by defendant to a state witness, and B was reserved to a ruling permitting the state to prove a dying declaration made by Thomas, after the shooting, and a half hour preceding his death.

[3] We will first consider defendant's objection to the admissibility of the dying declaration. Defendant contends that the declaration should not have been admitted, because *the deceased did not express a wish to make a dying declaration.* There is no requirement that such a wish should be expressed, and there is no particular form in which a dying declaration shall be made. If it was made under a sense of impending dissolution, it matters not to whom it may have been made, or what words the deceased may have employed to express himself; nor is it necessary that the declaration be volunteered. It is admissible, even though it be elicited by questions. State v. Trivas, 32 La. Ann. 1086, 36 Am. Rep. 293; State v. Somnier, 33 La. Ann. 237; State v. Parham, 48 La. Ann. 1311, 20 So. 727; State v. Ashworth, 50 La. Ann. 94, 23 So. 270.

[4] The record discloses that when Gus Thomas was shot he fell on the ground, outside of the house. A few moments after the shooting, Prosper Thomas picked him up. At that time he said he was shot to death; he was gone; he was ended. In response to a question as to what he had done, he said Sidney Pierfax had shot him, and had shot him for nothing; he had not done him anything.

The wounded man was placed on a bed inside the house, and he there repeated what he had said when he was picked up. He died about a half hour thereafter.

With these facts before him, the trial judge admitted proof of the dying declaration. To have ruled otherwise, the judge would have misconceived his duty and misapplied the law.

[5, 6] Counsel objected to the refusal of the judge to permit him to ask witness Prosper Thomas the following question:

"When you were asking him these questions, had you not made everybody get out of the room except yourself?"

It is not necessary to consider this objection, because after the ruling had been made, and a bill was reserved thereto, counsel practically repeated the question, and the witness answered it in the negative. In the transcript, at page 20, immediately after the court's ruling, we find the following:

"Bill reserved.
"Q. I now ask you, if you didn't put the wounded man in a room by himself and make everybody else get out? A. No, sir."

Even though a ruling of the trial judge be erroneous, it will not warrant the reversal of the verdict in the absence of some showing of resultant injury or prejudice. State v. Wren, 121 La. 55, 46 So. 99; State v. Waldron, 128 La. 559, 54 So. 1009, 34 L. R. A. (N. S.) 809; State v. Higginbotham, 138 La. 366, 70 So. 328; State v. Hardy, 142 La. 1061, 78 So. 116; State v. Barnhart, 143 La. 596, 78 So. 975.

[7] Bill No. 4 was reserved to the court's limiting the argument of the case to 30 minutes to each side. We think this bill is without merit. All matters pertaining to the conduct of the court, and to the regulation of the proceedings before it, are addressed to the sound discretion of the presiding judge. Such matters will not be considered by this court in the absence of an apparent abuse of discretion by the judge, or a showing of an arbitrary and unreasonable exercise thereof.

Bill No. 5 was reserved to the overruling of a motion for a new trial. The motion was

filed pro forma, and the bill presents nothing for review.

Finding no error in the record, the verdict and sentence are affirmed.

O'NIELL, C. J., absent.