614 So.2d 711 (1993)
STATE of Louisiana
v.
Frank WASHINGTON.
No. 92-K-2189.
Supreme Court of Louisiana.
March 2, 1993.
Daryl Gold, Shreveport, for applicant.
Richard P. Ieyoub, Atty. Gen., James M. Bullers, Dist. Atty., Charles E. McConnell, Asst. Dist. Atty., for respondent.
*712 PER CURIAM:
The defendant was tried and convicted on three counts of distribution of cocaine in violation of La.R.S. 40:967(B)(1). The trial court sentenced him to a combined total of twenty (20) years at hard labor. On appeal, a divided panel on the Second Circuit affirmed the defendant's convictions and sentences in an unpublished opinion. State v. Washington, 601 So.2d 40 (La.App. 2nd Cir.1992) (Brown, J. dissenting). Among other arguments rejected, the majority on the Second Circuit panel determined that the trial judge did not abuse his discretion by imposing a 15-minute limit on the closing arguments of both the state and the defense. We granted certiorari to review that question, 609 So.2d 238 (La.1992), and now reverse. The record shows clearly that the limits imposed by the court disrupted counsel's argument and substantially impaired counsel's ability to review and argue the evidence bearing on all three counts against the defendant.
Defendant's convictions involved distribution of single "rocks" of cocaine to undercover agents recruited by the Bienville-Claiborne-Webster Parish Narcotics Task Force to make narcotics cases in Webster Parish, particularly in Minden, Louisiana. The state charged defendant with distributing one rock of cocaine to agent John Jackson on Chestnut Street in Minden on the night of December 30, 1989, at approximately 6:45 p.m. Less than two hours later, according to the state's case, the defendant sold a second rock of cocaine to a Tommy George on the porch of a residence located on Searle Street in Minden, as agent Jackson, and another undercover officer, Saul Wilson, watched from their car parked nearby. George had met the officers on Searle street and led them to the residence for purposes of making the buy. Three months later, on March 30, 1990, the officers returned to Chestnut Street in Minden accompanied by their confidential informant. They testified that defendant recognized them and approached their vehicle on the driver's side, where he spoke briefly with Jackson in the back seat and sold him a rock of cocaine.
Jackson and Wilson had both come from Beauregard Parish and were experienced narcotics agents. Wilson claimed that he had participated in 250 to 300 cocaine buys. Half of those cases had been prosecuted and Wilson boasted that he had never lost a case because of misidentification. Wilson's work had brought him into Webster Parish on several prior occasions but this case represented his first contact with the defendant. Jackson also had had no previous contact with the defendant. Nevertheless, both officers positively identified the defendant in all three sales. The officers could not agree, however, on whether the moon was out or it was raining on the night of December 30, 1989, or whether George and the defendant stood alone on the porch of the Searle Street residence or in the company of four or five other persons.
Two of four defense witnesses called by counsel were the defendant's half brothers, Tarom Harris and Freddie Harris. Counsel established that they lived together on Chestnut Street in Minden. Cross examination of the brothers brought out that Tarom Harris had a prior conviction for cocaine distribution and Freddie Harris had four pending charges against him, also for distribution of cocaine. Harris's arrests on those charges had led to revocation of his probation on a previous conviction for possession of cocaine with the intent to distribute. Called as a defense witness, Tommy George flatly denied buying a rock of cocaine from the defendant on the night of December 30, 1989. George admitted that he had anywhere from eight to ten prior convictions. The defendant, who gave his address on Cherry Street in Minden, acknowledged that he had one prior conviction unrelated to drug activity. He denied making any sales to the agents.
Freddie Harris, summoned to court from the Webster Parish Penal Farm following revocation of his probation, had "no idea" why he was called as a witness, and the prosecutor acknowledged the same confusion in his closing argument to the jury. Referring to the defense witnesses, the prosecutor confessed that he did not know what defense counsel was "trying to prove. *713 They didn't prove anything except they're a bunch of crooks."
Counsel readily agreed with that observation in his own closing argument as he pulled together for the jurors the elements of a defense which relied on the officers' relative unfamiliarity with the Minden area, their brief nighttime contact with the cocaine dealer, the press of their caseload, and the confusion brought on by the physical resemblance of the Harris brothers. "... I'll tell you why I put them on the stand," counsel informed the jurors, "because they're drug dealers. And I don't know which one it was, but I suggest to you it was one of those people...." Counsel thus wanted jurors "to see how much Tarom looks like Frank. And I wanted you to see how much Freddie looked like Frank. And I wanted you to know that Tarom is a drug dealer. And I wanted you to know that Freddie is a drug dealer."
The point of this comparison, counsel explained to the jurors, and of exploring several discrepancies in the testimony of Jackson and Wilson regarding the two sales on the night of December 30, 1989, was to illustrate that "when you work as many cases as these guys worked, in so many different parishes, you can't remember what happened two years ago." At this juncture, the heart of the defense, the trial judge informed counsel that he needed to close as he had only one minute left. Apologizing to jurors that he was "leaving things out," counsel hastily closed with a reminder that he, and not the state, had called George as a witness, but without addressing the state's evidence on the sale of March 30, 1990.
A trial judge has broad discretion and the duty "to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done." La.C.Cr.P. art. 17. The judge must therefore "be and is given great latitude in controlling the duration and limiting the scope of closing summations." Herring v. New York, 422 U.S. 853, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975); State v. Reeves, 263 La. 923, 269 So.2d 815 (La.1972); State v. Pierfax, 158 La. 927, 105 So. 16 (1925). The court must, however, exercise that discretion in light of "the very premise of our adversary system of criminal justice ... that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free...." Id. "No aspect of such advocacy could be more important," Herring observes, "than the opportunity finally to marshal the evidence for each side before submission of the case to judgment." Id. The primary purpose of direct and cross examination of witnesses therefore "is to create the record upon which summation will be based." 6 A.P. Ordover, Criminal Law Advocacy, § 1.01 (1990).
Trial in this case took two days. On the first, jury selection occupied the morning and early afternoon. The state then called its first three witnesses, including Agent Wilson, before the court recessed for the night. On the following day, the case went to the jurors in mid-afternoon and they returned verdicts on all three counts two hours later. The court restricted argument not to ease any burden already imposed on the jurors but out of fear that "any time longer than 15 minutes would have allowed nothing but repetition, waste of this jury and this court's time, and would have resulted in an appeal to passion, prejudice and sympathy...."
The defense of the case was not immediately obvious to even the prosecutor, however, and counsel had the right to explain why he structured his direct and cross examination of the witnesses in a particular way and what he thought that the evidence did or did not prove. Herring v. New York, supra. Counsel had to overcome eyewitness police identification testimony and he faced that task not by appealing to the sympathies and prejudices of the jury but by presenting a logical and largely nonrepetitious exploration of why the evidence at trial made the credibility of that testimony less than the state supposed. Under these circumstances, the trial court's adherence to the 15 minute limit, which overshadowed and dominated the arguments of *714 both state and the defense without any apparent necessity in the record, represented an abuse of the court's discretion. Defense counsel have no right to fillibuster but they "must be given sufficient time to fully and completely present his or her argument to the jury." Stockton v. State, 544 So.2d 1006, 1009 (Fla.1989).
Accordingly, defendant's convictions are reversed, his sentences vacated, and this case is remanded to the district court for all proceedings not inconsistent with the view expressed herein.
CALOGERO, C.J., not on panel.