WELCH, J.
|2The defendant, Shannon Charles Ferguson, was charged by bill of information with possession of a Schedule II controlled dangerous substance (cocaine), a violation of La. R.S. 40:967(C)(2) (count I), and simple battery, a violation of La. R.S. 14:35 (count II). At the arraignment, the defendant pled not guilty. Following three Faretta hearings, the defendant was, along with standby counsel, allowed to represent himself. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Following trial, the defendant was found guilty as charged on count I by a unanimous jury.[1] A motion for new trial was filed, but denied by the trial court. The defendant was sentenced to imprisonment at hard labor for five years and fined $5,000.00.
An amended habitual offender bill of information was filed by the State, alleging the defendant to be a sixth-felony habitual offender. Following a hearing, the defendant was adjudicated a fifth-felony habitual offender.[2] His earlier sentence was vacated, and the defendant was sentenced to serve sixty years at hard labor without the benefit of parole, probation, or suspension of sentence. A “Motion to Reconsider Multiple Offender Ruling” was filed by the defendant, but denied by the trial court for lack of jurisdiction due to the fact that the trial court granted the defendant’s motion for appeal. The defendant now appeals with six | ^counseled assignments of error, and seven pro se assignments of error. To facilitate our discussion of the numerous assignments of error, we will discuss similarly situated claims, both counseled and pro se. For the following reasons, we affirm the' defendant’s conviction and habitual offender adjudication, but amend the sentence by removing the restriction on parole eligibility, and affirm as amended.
STATEMENT OF FACTS
On October 4, 2011, Officer Seth Dantin of the Franklin Police Department was dispatched in response to a battery occurring near the courthouse in Franklin, Louisiana. Upon arrival at the scene, Officer Dantin observed the defendant being detained by St. Mary Parish Sheriffs deputies. Officer Dantin then spoke with near *129 by witnesses, who described seeing the defendant approach a vehicle and punch the driver in the nose. The defendant was arrested and transported to the Franklin police station, where, after being handcuffed, he was searched by Officer Dantin in the police station’s booking room. Along with a wallet, screwdriver, loose coins, and a bag of tobacco, Officer Dantin also located a “crack rock” on the defendant. Specifically, Officer Dantin testified that he initially discovered the cocaine after feeling something “hard” in the defendant’s front right pocket. Officer Dantin conducted a field test on the substance, which returned positive for cocaine. The substance was later submitted to the Aca-diana Crime Lab where Amanda Hebert, an expert in the field of forensic chemistry, tested the substance, and verified it to be a 30-milligram rock of cocaine.'
INSUFFICIENT EVIDENCE
In the defendant’s first pro se assignment of error, he challenges his conviction based on the sufficiency of evidence presented at trial. First, .he contends that Officer Dantin’s testimony regarding the discovery of the cocaine |4“was a recantation of his sworn [a]ffidavit ... which is inconsistent with [his] sworn [testimony].” Second, the defendant claims that the cocaine found in his pocket by Officer Dantin did not belong to him and argues “[t]he little piece of crack, as the officer [described] it, could have come off a cigarette pack, a debit card, been scooped off of the counter of a place of business with his change, been on a soda can or bottle [and then] transferred to the defendant’s hand.” For the above reasons, the defendant claims his conviction cannot stand.
The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most, favorable to the prosecution, a rational trier of fact could conclude that the State proved beyond a reasonable doubt the essential elements of the crime and defendant’s identity as the perpetrator of that--crime. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Patton, 2010-1841 (La.App. 1st Cir.6/10/11), 68 So.3d 1209, 1224. In conducting this review, we must also be mindful of Louisiana’s rule as to circumstantial evidence, i. e., “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438; State v. Millien, 2002-1006 (La.App. 1st Cir.2/14/03), 845 So.2d 506, 508-09.
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence’in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Wright, 98-0601 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 487, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157 and 2000-0895 (La.11/17/00), 773 So.2d 732.
Louisiana Revised Statutes 40:967(C) requires proof that a defendant knowingly or intentionally possessed a controlled dangerous substance as classified in Schedule II.[3] Whether an accused knows *130 a substance he possesses is a narcotic maybe proven by direct or circumstantial evidence. A conviction for possession of a controlled dangerous substance may rest on the possession of mere traces or residue of the substance, even absent admissions by the defendant, which might constitute guilty knowledge. State v. Leblanc, 2004-1032 (La.App. 1st Cir.12/17/04), 897 So.2d 736, 739, writ denied, 2005-0150 (La.4/29/05), 901 So.2d 1063, cert. denied, 546 U.S. 905, 126 S.Ct. 254, 163 L.Ed.2d 231 (2005). Furthermore, guilty knowledge is an essential element of the crime of possession of cocaine. However, since knowledge is a state of mind, it need not be proven as fact, but rather may be inferred from the circumstances. State v. Major, 2003-3522 (La.12/1/04), 888 So.2d 798, 803.
During Officer Dantin’s testimony, he stated that when he completed his arrest report, he mistakenly indicated the cocaine was located inside the defendant’s left pocket. However, in anticipation of his trial testimony, Officer Dantin reviewed the booking room video, and observed that, in fact, the cocaine was located inside the defendant’s right pocket. The defendant cross-examined Officer Dantin on this point and further argued it to the jury during his closing argument. Regardless of which pocket the drugs were located in, Officer Dantin responded “yes” when asked by the State at trial whether he was “absolutely certain” he retrieved the cocaine out of the defendant’s pocket. Additionally, as discussed above, Amanda Hebert, an expert in the field of forensic chemistry with Acadiana Crime Lab, testified the retrieved material was cocaine.
1 (After a thorough review of the record, we are convinced the evidence presented in this case, viewed in the light most favorable to the State, proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of possession of cocaine and the defendant’s identity as the perpetrator of that offense. The unanimous verdict rendered against the defendant indicates the jury accepted the testimony of the State’s witnesses and rejected the defendant’s attempts to discredit them. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Johnson, 99-0385 (La.App. 1st Cir.11/5/99), 745 So.2d 217, 223, writ denied, 2000-0829 (La.11/13/00), 774 So.2d 971. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of exculpatory hypotheses of innocence presented to, and rationally rejected by, the jury. See State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam ). The jury reasonably rejected the hypothesis of innocence presented by the defendant, i.e., that Officer Dantin’s mistake regarding the location of the cocaine indicated that he somehow planted the drugs on the defendant. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. See State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987). No such hypothesis exists in this case. Therefore, after reviewing the evidence, we cannot say that the jury’s determination was irrational under the facts and circumstances presented to them. See State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 662.
This assignment of error lacks merit.
J^RIGHT TO SELF-REPRESENTATION
In his first counseled assignment of error, the defendant claims “[t]he trial *131 judge erred in allowing [him] to represent himself without a competency hearing to determine if he could make a valid waiver where the record contains numerous indi-cia of [his] mental illness.” Specifically, the defendant claims that
[w]hile the judges did inquire of [him] if he were competent to make the decision to represent himself[,] and [he] agreed that he was, it is not clear from the record that he was in fact, competent to make that decision. The very inability to rationally consider his options and his fevered and vociferous accusations against the judges and counsel for both the state and the defense demonstrate, that [he] should minimally [have] been afforded an evaluation.before the decision to allow him to represent himself was made.
As such, the defendant concludes this decision denied him due process.
The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution’ give a defendant the right to counsel as well as the right to defend himself. A defendant may represent himself only if he makes an unequivocal request to represent himself and knowingly and intelligently waives his right to counsel. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes wide open. Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. Assertion of that right “must also be clear and unequivocal.” State v. Bell, 2009-0199 (La.11/30/10), 53 So.3d 437, 448, cert. denied, — U.S. -, 131 S.Ct. 3035, 180 L.Ed.2d 856 (2011).
In accepting a waiver of counsel, the trial court should advise the defendant of the nature of the charges, the penalty range for the charges, as well as the dangers and disadvantages of self-representation, such as the failure to recognize objections to inadmissible evidence and the inability to adhere to technical rules | ggoveming trials. Additionally, the trial court should inquire into the defendant’s age, education, mental condition and should determine according to the totality of circumstances whether the accused understands the significance of the waiver. In order to sufficiently establish on the record that defendant is making an intelligent and knowing waiver, the inquiry should involve more than an interchange of “yes” or “no” responses from the defendant. See State v. Strain, 585 So.2d 540, 542 (La.1991). Once the defendant has made an unequivocal request to represent himself, the trial court must determine whether the' defendant is competent to waive counsel and is “voluntarily exercising his informed free will.” State v. Santos, 99-1897 (La.9/15/00), 770 So.2d 319, 321 (per curiam) (citing Faretta, 422 U.S. at 835, 95 S.Ct. at 2541). The competency at issue is a defendant’s competence to waive his right to counsel, not his competence to represent himself. See State v. Santos, 770 So.2d at 321 (per curiam) (citing Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993)).
Whether a defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined on a case-by-case basis, considering the facts and circumstances of each case. State v. Leger, 2005-0011 (La.7/10/06), 936 So.2d 108, 147-48, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). The propriety of allowing a defendant to make this election *132 shall not be judged by what happens in the subsequent course of that representation. Rather, it is the record made in recognizing the waiver that controls. State v. Berry, 2008-151 (La.App. 5th Cir.6/19/08), 989 So.2d 120, 130, writ denied, 2008-1660 (La.4/3/09), 6 So.3d .767. The trial court has much discretion in determining whether the defendant’s waiver is knowing and intelligent, and an. appellate court should not reverse such a ruling unless an abuse of that discretion is shown. State v. Warner, 594 So.2d 397, 403 (La.App. 1st Cir.1991); writs denied, 596 So.2d 196 and 600 So.2d 668 (La.1992).
In the instant case, we find that the trial court did not abuse its discretion in granting the defendant’s request to represent himself. During the Faretta hearings, the trial judge determined the defendant’s age, education, employment history; his ability to read, write and understand the English language; and his familiarity with the legal system. The trial court also ascertained that the defendant understood the nature , of the charged offense as well as the sentencing range if convicted.- The trial court advised the defendant of the dangers and disadvantages of self-representation, and the defendant indicated he understood them. The defendant was informed that by choosing to represent himself, he would be giving up his right to counsel. He was further informed of,his right against self-incrimination and that by representing himself, he would be exposing himself to the jury in such a manner that he would -not otherwise be exposed if represented by counsel. The defendant was advised by the trial court on the complex nature of the legal proceedings and was informed of the various trial tasks he would be required to perform. Additionally, the defendant clearly and unequivocally stated that he wanted to represent himself. In light of the foregoing, we find that under the totality of the circumstances, including the trial court’s lengthy interaction with the defendant at the multiple Faretta hearings, that the defendant’s waiver-of his right to, counsel was knowingly, intelligently, and voluntarily made. Further, we find the defendant’s assertion of the right to represent himself was clear and unequivocal.
According to La.Code of Crim. P. art. 641; “[mienta! incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist' in his defense.” A defendant’s mental incapacity to proceed may be raised at any time by the defense, | mthe district attorney or by the trial court. When the question of the defendant’s mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed. La. Code Crim. P. art. 642.
The trial judge is only required to order a mental examination of the defendant when he has reasonable a ground to doubt the defendant’s mental capacity to proceed. La.Code Crim. P. art. 643. The ordering of a mental examination falls within the sound discretion of the court. State v. Clark, 367 So.2d 311, 313 (La.1979). The trial court’s ruling will not be disturbed on appeal absent a clear showing of an abuse of that discretion. State v. Wilkerson, 403 So.2d 652, 658 (La.1981). Even if the defendant urges insanity as a defense, there must be sufficient evidence to raise a reasonable doubt as to. such capacity before the article’s mandate is activated. Moreover, there must be substantial doubt as to mental capacity before refusal to order an examination constitutes an abuse of the trial court’s discretion. State v. Hobley, 98- *133 2460 (La.12/15/99), 752 So.2d 771, 786, cert denied, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000). The question of whether the defendant was deprived of his due process right to a determination. of his competency contemporaneous to trial turns on whether the trial judge received information that, if objectively considered, should reasonably have raised a doubt about the defendant’s competency, and alerted the judge to the possibility that the defendant could neither understand the proceedings, or appreciate their significance, nor rationally aid in his defense. State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 832, 851.
In the instant case, we find the trial court did not abuse its discretion by not ordering á mental examination of the defendant. The record is devoid of any reasonable ground to doubt the defendant’s mental capacity to proceed that existed Inprior to trial. First, the defendant was represented by counsel on numerous occasions, and none of them moved for a competency hearing. In addition, the defendant tendered only a plea of not guilty to his charges, rather than a dual plea including not guilty by reason of insanity. Second, the trial court had ample opportunity to consider the defendant’s mental capacity based on its lengthy interactions with the defendant during his numerous court appearances. Further, the defendant filed numerous pro se motions. The record further reflects that the trial court conducted thorough Faretta hearings over three days, and based on the defendant’s answers to ,a series of detailed questions, the trial court found him competent to waive his right to counsel.
The transcripts of the proceedings, ,in addition to the written motions filed by the defendant, do not reflect that the trial court had reasonable grounds to doubt the defendant’s mental capacity to proceed. There was no evidence to alert the court .to the possibility that the defendant could not understand the proceedings, appreciate the significance of the proceedings or defend himself. Thus, we conclude that the defendant’s claim -that-the trial court erred by failing to order a competency hearing prior to finding him competent to represent himself as well as this assignment of error, lacks merit. See State v. Victor, 2013-888 (La.App. 5th Cir.12/23/14), 167 So.3d 118, 128.
PRESERVATION OF EVIDENCE
In his second counseled assignment of error, the defendant asserts that “[t]he disposal of evidence in this case deprived [him] of his constitutional right to present a defense.” Specifically, the defendant argues that Officer Dantin’s -disposal of the pocket lint in which the cocaine was found constituted a denial of due process. The defendant contends that “had the lint been available for DNA testing, it would have shown that his DNA was not present, indicating it -could not l^have been in his poeket[.]” ■ The defendant avers that Officer Dantin “either planted the drug -or that it was on.the floor, or desk from a previous arrest.” Further, the defendant avers that he “was known to the police and courts in the area ... [and] contends that the animosity against him provoked the police to plant the piece of crack ...” As such, the defendant concludes that “Officer .Dantin’s discarding of the packaging for the cocaine violated regulations, and whether bad faith or not, and arguably in bad faith since it was a direct deviation from policy, deprived [him] of the evidence needed to exculpate himself.”
Due process requires that the State provide a defendant with any exculpatory evidence in its possession, which is material to defendants guilt or punishment, regardless of the good faith or bad *134 faith of the prosecutor. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). Where a defendant claims that his due process rights have been violated due to the State’s failure to preserve potentially useful evidence, the defendant has the burden of showing that the State acted in bad faith. Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); see State v. Harris, 2001-2730 (La.1/19/05), 892 So,2d 1238, 1253, cert. denied, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005). In California v. Trombetta, 467 U.S. 479, 488-89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984), the United States Supreme Court explained:
Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect’s defense. To meet this standard of constitutional materiality, [... ] evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.
[Internal citations omitted].
| ^Officer Dantin testified that during his search of the defendant, he pulled the defendant’s pocket “completely out because all the way in [the] comer is where I had felt the hard substance.” In doing so, coins from inside the defendant’s pocket fell to the floor. Officer Dantin then picked up the items, separated the “hard piece” that he found in the lint from the coins, and placed them all together on a nearby desk, which he testified was clear prior to the start of the defendant’s search. Officer Dantin confirmed that it was not possible that the lint or cocaine was previously on the floor prior to the search, or that they stuck to one of the coins when they fell out of the defendant’s pocket. Though he testified he did dispose of the lint, and that he did not think to test it for DNA evidence, Officer Dantin was absolutely certain he located the cocaine from inside the defendant’s pocket. After a review of the record, we find that the defendant did not establish any bad faith on the part of Officer Dantin or the State concerning the disposal of the pocket lint. Additionally, the cocaine, which provides the factual basis for supporting the defendant’s charge, was maintained and tested. While it is true that Officer Dantin did discard the lint, the defendant has not shown that it had apparent exculpatory value. Also, this disposal allowed the defendant to criticize the investigation of the crime and cast doubt on Officer Dantin’s handling of the evidence. See Harris, 892 So.2d at 1253, n. 31. Moreover, in his closing argument, the defendant presented his hypothesis of innocence to the jury— that the lint-covered cocaine was on the booking room floor prior to the defendant’s search and was picked up when the coins fell out of the defendant’s pockets. This hypothesis was rejected unanimously by the jury. For the foregoing reasons, this assignment of error lacks merit.
luIMPROPER HABITUAL OFFENDER ADJUDICATION
In his third counseled, and later addressed as his seventh pro se assignment of error, the defendant alleges the “trial judge erred in adjudicating [him] a fifth felony offender where the plea colloquies in several of the underlying cases are unclear as to the meaning of the ‘no multi-bill promise.’ ” Specifically, he argues that the vague understanding of the phrase “no multi-bill,” as used in some of the predicate guilty pleas, should preclude their use as a basis for his instant habitual offender adjudication. He further contends that *135 “[t]he State must affirmatively show ... with the transcripts of the time of the plea that the plea was made with an explanation particular to the clause no multi-bill, and the State did not, thus, abandoning its burden of proof.” In his counseled brief, the defendant concludes that, at a minimum, an evidentiary hearing should be ordered to determine the validity of the predicate guilty pleas.
If the defendant denies the allegations of the habitual offender bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when the pleas were taken. State v. Shelton, 621 So.2d 769, 779 (La.1993). If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Id. If the defendant is able to do this, then the burden shifts to the State. Id. The State will meet its burden if it introduces a “perfect” transcript of the taking of the guilty plea, one that reflects a colloquy between the judge and the defendant, wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his | ^accusers.[4] If the State introduces anything less than a perfect transcript, for example, a guilty plea form, a minute entry, an imperfect transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and the State to determine whether the State has met its burden of proving that the defendant’s prior guilty plea was informed and voluntarily and made with an articulated waiver of the three Boykin rights. State v. Shelton, 621 So.2d at 779-80. The purpose of the rule of Shelton is to demarcate sharply the differences be-tweén direct review of a conviction resulting from a guilty plea, in which the appellate court may not presume á valid waiver of rights from a silent record, and a collateral attack on a final conviction used in a subsequent recidivist proceeding, as to which a presumption of regularity attaches to promote the interests of finality. See State v. Deville, 2004-1401 (La.7/2/04), 879 So.2d 689, 691 (per curiam).
Concerning each of the four predicate offenses, the State introduced certified copies of the bills of information, guilty plea minute entries, and “perfect” plea colloquy transcripts between the defendant and the trial court, reflecting that the defendant was represented .by counsel, discussed the pleas with counsel, was advised of and waived his Boykin rights, and was not under the influence of threats or duress while offering his pleas. The State in the instant matter carried its burden of proving the existence of the defendant’s four predicate guilty pleas, that they were freely and voluntarily given and that the defendant was represented by counsel. The defendant offered no evidence showing an infringement of his rights or a procedural irregularity in the taking of the pleas. Accordingly, the State | Uiproved the defendant’s predicate convictions, and the trial court correctly adjudicated the defendant a fifth-felony habitual offender.
*136 In support of his argument that an evi-dentiary hearing should be conducted “to determine the validity of the underlying pleas,” the defendant erroneously relies on State v. Kittlin, 97-92 (La.App. 3rd Cir.6/4/97), 695 So.2d 1137. In Kittlin, the defendant pled guilty to attempted possession of cocaine, then following the filing of a habitual offender bill of information was adjudicated a third-felony habitual offender. On appeal, the defendant “claim[ed] that in exchange for, his guilty plea to attempted possession of cocaine, the prosecution promised that conviction would not be used to ‘enhance sentence under the Habitual Offender Statute.’ ” Id. at 1140. The Court in Kittlin, recognizing some conflicting statements between, the prosecutor, trial court and the defendant regarding the terms of the plea agreement, “remand[ed] [the] case to the trial court for an evidentiary hearing to determine what the parties’ intended with respect to the habitual offender bill.” Id. at 1141. However, the Court continued, and stated:
Moreover, if. after an evidentiary hearing it is determined that the terms of the plea bargain reflects an agreement by the State ‘that it would not use the attempted possession of cocaine conviction as a predicate for future habitual offender adjudications,’ this plea would be considered invalid as it is against public policy as it could be construed as an encouragement of future criminal activity.,. While the State clearly can promise a defendant that it will not enhance the defendant’s present conviction by filing a habitual offender bill, it cannot enter into a plea agreement compromising its ability to prosecute future criminal activity. An agreement of this nature is equivalent to a ‘down-payment’ on a future sentence and might well encourage future criminal activity instead of deterring such activity. Public policy considerations do not allow us to condone a plea bargain which makes ‘concessions in advance’ of future criminal activity.

Id.

|17The instant case and Kittlin are factually distinguishable. In Kittlin, the issue was whether the prosecutor agreed not to file a habitual offender bill of information regarding the underlying offense in exchange for the plea agreement. Here, the defendant argues that language and discussions from previous plea agreements, some over twenty years earlier, containing “no multi-bill” language, prohibit their use as predicate convictions in the instant offense, a proposition expressly rejected by Kittlin. We agree with the court’s holding in Kittlin, and find any agreement of this nature violates public policy as it encourages, rather than deters, future criminal activity. As such, in the instant case, the four predicate guilty pleas used by the State to support the defendant’s adjudication were valid, and the trial court correctly adjudicated the defendant a fifth-felony habitual offender. Therefore, the defendant’s counseled and pro se assignments of error aré without merit.
EXCESSIVE SENTENCE '
In his fourth counseled assignment of error, the defendant asserts that the enhanced sentence he received following his adjudication as a fifth-felony habitual offender is unconstitutionally excessive. Specifically, he contends a sentence of sixty years at hard labor without benefit of parole, probation, or suspension of sentence essentially constitutes a life sentence and, therefore, is excessive in light of his mental illness and lack of extensive violent criminal history. A thorough review of the record indicates the defendant did not make or file a. motion to reconsider sentence following the trial court’s imposition of the enhanced sentence. Under La.Code *137 Crim. P. arts. 881.1(E) and 881.2(A)(1), the failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider may be based, shall preclude, the defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. See State v. Mims, 619 So.2d 1059 (La.1993) (per curiam); State v. Duncan, 94-1563 (La.App. 1st Cir.12/15/95), 667 So.2d 1141, 1143 (en banc per curiam).
While a “Motion to Reconsider Multiple Offender Ruling” was filed by the defendant, this motion addresses -issues relative to the validity of the defendant’s habitual offender adjudication,-namely, the validity of his predicate guilty pleas. Nowhere in the “Motion to Reconsider Multiple Offender Ruling” does the defendant allege that his enhanced sentence is excessive, nor does he provide specific grounds in support thereof as required by La.Code Crim. P. art. 881.1(B).[5] Moreover, the defendant failed to lodge an oral motion to. reconsider sentence following the trial court’s imposition of the habitual offender enhanced sentence. Therefore, because of his failure to file a motion to reconsider sentence after being adjudicated and sentenced as a fifth-felony habitual offender, the defendant is procedurally barred from having this assignment of error reviewed on appeál. See Duncan, 667 So.2d at 1143.
RECONSIDERATION OF MULTIPLE OFFENDER ADJUDICATION
In his fifth counseled assignment of error, the defendant argues the trial court erred by dismissing his “Motion to Reconsider Multiple Offender Ruling” for lack of jurisdiction. Specifically, he contends the motion constituted a valid motion to reconsider sentence. . Additionally, he contends that-despite the previously granted order of appeal, the trial court retained jurisdiction' to rule on the motion. As such, the defendant argues the matter should be. remanded ¡for consideration of the merits; •”
Louisiana Code of Criminal Procedure Article 916(3) and (8) provide:
The jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order hflpf appeal. Thereafter, the trial court has no jurisdiction to take any action except as otherwise provided by law and to:
[[Image here]]
(3) Correct an illegal sentence or take other appropriate action pursuant to 'a properly made or filed motion to reconsider sentence.
[[Image here]]
(8) Sentence the defendant pursuant to a conviction under the Habitual Offender Law as set forth in R.S. 15:529.1.
As discussed above, the “Motion to Reconsider Multiple Offender Ruling” is not a valid motion to reconsider sentence. Nowhere in the motion does the defendant allege his enhanced sentence is excessive, nor does he state any grounds in support thereof as required by La.Code Crim. P. art. 881.1(B). Further, La.Code Crim. P. art. 916(8)' allows the trial court to retain jurisdiction only to conduct; but not review, habitual offender proceedings. See State v. Fields, 96-0336 (La.App. 1st Cir.3/27/97), 691 So.2d 747, 750-51, writ denied, 97-1081 (La.10/13/97), 703 So.2d 610; see also La. R.S. 15:529.1(D)(1)(b) (“[a]ny challenge to a previous conviction which is not made before sentence is im *138 posed may not thereafter be raised to attack the sentence.”). The defendant’s motion seeks review in the trial court of the validity of his adjudication as a fifth-felony habitual offender. Therefore, because Article 916 does not confer jurisdiction to the trial court to reconsider the validity of a defendant’s habitual offender adjudication, and since the defendant’s “Motion to Reconsider Multiple Offender Ruling” does not constitute a valid motion to reconsider sentence, the trial court was correct in dismissing the motion for lack of jurisdiction. As such, this assignment of error is without merit.
SENTENCING ERROR
In his sixth counseled assignment of error, the defendant alleges the trial lancourt erred in imposing the habitual offender enhanced sentence without the benefit of parole in violation of La. R.S 15:529.1(G), and contends the sentence should be amended to delete such restriction. Herein, the trial court imposed the sixty-year enhanced sentence without the benefit of parole. However, neither La. R.S'. 40:967(0(2) nor 15:529.1(G) restrict parole eligibility. An illegal sentence may be corrected at any time by the court that imposed the sentence, or by an appellate court on review. La.Code Crina. P. art. 882(A). As this assignment of-error has merit, we amend the enhanced sentence to delete the restriction of parole, and affirm as amended. The entire sentence is still to be served without benefit of probation or suspension of sentence. - The case is remanded for the clerk of court, to amend the minutes and commitment order by deleting the restriction of parole, and to transmit the minutes and amended commitment order to the Department of Corrections.
VIOLATION OF THE TRIAL COURT’S DUTIES
In his second pro se assignment of error, the defendant first argues the trial court “prejudiced the administration of a fair proceeding and trial,” by “taking [on] the duties of the prosecutor, violating his neutral position!,] and showing he could not administer a fair proceeding.” Specifically, the defendant notes that “[t]he Court questioned officers, had them make phone calls, and found out what the disposition of the evidence was ...,” which he contends “violat[ed] [the trial court’s] neutral position and [showed] he could not administer a fair proceeding.”
On February 3, 2014, the trial court ordered that the pocket lint and field test kit be turned over to the defendant. On the-same day, the defendant filed a Motion-to Quash on the grounds the items were not produced to him. On February 4, 2014, the day of trial, the defendant’s Motion to Quash was reviewed outside of the presence of the prospective jurors. In order to ascertain whether or not the lint |21and' field test kit existed, the trial court contacted and questioned both Officer Dantin and Officer Tina Thibodeaux of the Franklin Police Department. This communication was not ex parte as all parties, including the defendant who was representing himself, were present. Moreover, the trial court was attempting to help the defendant, as his diligence could possibly benefit his defense. Therefore, this argument has no basis in the record and does not affect the substantial rights of the defendant. See La.Code Crim. P. art. 921.
Furthermore, the defendant contends that the trial court “prejudiced' himself, the jury, and the administration of a fair proceeding by violating the rules he explained to both parties and the jury by allowing the jury to hear argument, discussion, and rulings that had nothing to do with the evidence.” The defendant specifically refers to the trial court’s opening instruc *139 tions to the jury, where it stated as follows:
You will hear objections made from time to time. And when there is an objection made, I am going to tell both sides now that all they can do is say, ‘Your Honor, I object.’ At that point either you or we are going to go into that little room and I will hear what the objection is and I hear the arguments on both sides about the objection and I will make a ruling. You won’t hear that part of it. The reason you won’t hear it is, that’s not evidence. That is argument and discussion, and that is not evidence, and you have got to decide the case based on evidence.
In his pro se brief, the defendant identifies seven instances during the course of trial when objections, some of which were merely procedural in nature, were made and the trial court did not excuse the jury from the courtroom. The defendant, without any applicable supporting legal authority, asserts
[t]his is a clear violation of the rule set forth by the Judge, showing he prejudiced [the] fair- administration of - the proceeding. But, also prejudicing the jury and undermining the confidence of the outcome of the trial. [One] time the jury was removed. All other times the jury was allowed to hear rulings, arguments, and discussions that they should not have.
122As such, the defendant concludes that his verdict and sentence must be reversed, as due process was “violated beyond repair.”
Apart from one instance where the jury was removed, the record reflects that in each of the other occurrences, the defendant did not object to or request that the jury be excused during the parties’ arguments concerning the objection. Moreover, half of the cited objections were made by the defendant himself, with no follow-up request to remove the jury. We note that under La.Code Crim. P. art. 841, a contemporaneous objection is required to preserve an error for appellate review. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on the objection and thereby prevent or cure- an error. State v. Hilton, 99-1239 (La.App. 1st Cir.3/31/00), 764 So.2d 1027, 1035, writ denied, 2000-0958 (La.3/9/01), 786 So.2d 113. Irregularities or errors cannot be availed of on appeal if they are not objected to at the time of the occurrence. State v. Walker, 94-0587 (La.App. 1st Cir.4/7/95), 654 So.2d 451, 453, writs denied, 95-1124 and 95-1125 (La.9/22/95), 660 So.2d 470. Therefore, because the defendant did not object to, or at the time' request that the jury be removed from the courtroom, this particular assignment of error is not preserved for appellate review.
Moreover, .the trial court’s statements to the jury at , the beginning .of the trial were not meant to confer an absolute right to the defendant to have the jury removed , from the courtroom every time an objection was made. A trial court has broad discretion and the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings so that justice is done. State v. Washington, 614 So.2d 711, 713 (La.1993) (per curiam) (citing La.C.Cr.P. art. 17.) All matters pertaining to the conduct of the trial are within the sound discretion of the trial court, and its rulings will not be disturbed absent an abuse of discretion. See State v. Rubens, 2010-1114 (La.App. 4th Cir.11/30/11), 83 So.3d 30, 45, writs denied, 2012-0374 (La.5/25/12), 90 So.3d 410 & 2012-0399 (La.10/12/12), 99 So.3d 37, cert. denied, — U.S. — , 133 S.Ct. 1595, 185 L.Ed.2d 591 *140 (2013). Therefore, because of the trial court’s inherent power and authority, it did not abuse its discretion by failing to remove the jury every time an objection was made during trial. See La.Code Crim. P. art. 17.
Based on the foregoing reasons, this pro se assignment of error is without merit, or otherwise not- preserved for appellate review. .
FALSIFIED MINUTE ENTRY
In his third pro se assignment of error, the defendant asserts that the minutes dated August 21, 2013 are “false as the transcript will prove,” and that “[t]he preliminary hearing and Motion to Suppress [hearing] never happened.” He further claims that “[d]ue [pjrocess requires that a preliminary hearing and [m]otion to [suppress, once granted[,] be heard. In this case, [they were] not. And the [m]inutes were made to appear as if they were held.” As such, the defendant, without citing any jurisprudence or other legal authority, concludes his due process rights were violated.
According to the minute entry dated August 21, 2013, a preliminary hearing, along with hearings op a motion to suppress and motion to reduce bond filed by the defendant, were conducted. The defendant represented himself and was present in court. The minutes reflect that during the preliminary hearing, evidence was adduced and completed on behalf of the State and the , defendant, with the trial court ultimately concluding that probable cause existed for the charge of possession of cocaine. The trial court also denied the defendant’s motion to suppress and motion, to reduce bond. .
The hearing transcript from August 21, 2013 supports and confirms the | ^minute entry. The transcript reflects that both parties, including the defendant himself, presented and cross-examined witnesses. Contrary to the defendant’s assertion that “the [c]ourt ruled there was probable cause for the arrest of the [b]attery charge which had nothing to do with the [possession of [c]ocaine charge” at the conclusion of the hearing, the trial court found “that there is probable cause for the defendant to be held over on the felony charges of possession of cocaine. There is no preliminary hearing on a misdemeanor [charge] — ” Furthermore,, the transcript confirms the trial court’s denial of the defendant’s motion to suppress. Therefore, because the transcript supports the August 21, 2013 minute entry, the defendant’s assertion of a falsified minute entry is baseless. This assignment of error is without merit.
AMENDED BILL OF INFORMATION
In his fourth pro sé assignment of error, the defendant contends that the bill of information was amended on the day of trial; however, he “was not made aware of this and it -is not in any hearing or trial record.” He further asserts, without citing legal authority, that “[t]his is another example of non-disclosure [by] the State. Surely, [d]ue [p]rocess is offended when you change the information and go to trial the same day without informing the defense.”
Louisiana Code of Criminal Procedure article 489 provides, in pertinent part:
If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection,, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time.
When an indictment is amended, unless the defendant moves for a con *141 tinuance on the ground that he is prejudiced thereby, and requires additional time to prepare his defense, he cannot later complain that he was prejudiced by the amendment. See State v. Williams, 347 So.2d 184, 186 (La.1977); State v. Issac, 527 So.2d 1045, 1049 (La.App. 5th Cir.), writ denied, 532 So.2d 175 (La.1988). The burden is on the defendant to establish that an amendment to an information or indictment has prejudiced his defense so as to necessitate granting a continuance. State v. Davis, 385 So.2d 193, 197-98 (La.1980), cert. denied, Penns v. Louisiana, 529 U.S. 1134, 120 S.Ct. 2014, 146 L.Ed.2d 963 (2000).
The purpose of a continuance is to prevent prejudicial surprise to the defendant. Davis, 385 So.2d at 197. Herein, other than stating that the amendment was made at the last minute, the defendant has failed to show or allege how the amendment prejudiced his defense. See State v. Gilbert, 99-315 (La.App. 5th Cir.4/25/00), 760 So.2d 536, 539. The record reflects that the defendant did not move for a continuance or otherwise object when the bill of information was amended. Thus, there was no showing, or even an attempt to show, that the defendant was prejudiced by the amended bill of information. See Issac, 527 So.2d at 1049. Additionally, contrary to the defendant’s, claim that he did not receive a copy of the amended bill of information, the minute entry from February 4, 2014, the morning of trial, reflects the defendant was provided a copy of the amended bill of informar tion. Moreover, the amended bill of information actually benefitted the defendant, as it removed the charge of simple battery. Therefore, we find the defendant was not prejudiced by and the trial court did not err in allowing the amended bill of information. This assignment of error lacks merit. . -
ASSIGNMENT OF STANDBY ■ COUNSEL
In his fifth pro se assignment of error, the defendant solely asks, “[a]nd what effect of law and prejudices [sic] occurs when stand-by counsel is a lawyer that was removed from this case because of complaints to the bar association and the court reassigns him to your case over your objections?” This assignment of error is merely identified in the defendant’s handwritten “List of Issues Presented for Review,” and does not contain any argument within the body of his pro se brief. Assignments of error not briefed by a defendant on appeal are considered abandoned. Uniform Rulés of Louisiana Courts of Appeal, Rule 2-12.4. Therefore, because the defendant failed to make any particularized argument with respect to this assignment of error, and cited no legal authority, this assignment of error is deemed abandoned. See State v. Williams, 632 So.2d 351, 353 (La.App. 1st Cir.1993), writ denied, 94-1009 (La.9/2/94), 643 So.2d 139.
BRADY ERROR
In his final pro se assignment of error, the defendant contends that he was deprived his due process rights, and bis constitutional right to present a defense, because the State failed to disclose information regarding the destruction of the pocket lint and field test kit. As such, he argues that because of the non-disclosure, “none of the State’s evidence is proper before the [c]ourt.”
The purpose of pretrial discovery procedures is to eliminate unwarranted prejudice to a defendant that could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042, 1044 (La.1982), Discovery procedures enable a- defendant to properly .assess, the strength of the *142 State’s case against him in order to prepare his defense. State v. Herron, 2003-2304 (La.App. 1st Cir.5/14/04), 879 So.2d 778, 787. The State’s failure to comply with discovery procedures will not automatically demand a reversal. State v. Gaudet, 93-1641 (La.App. 1st Cir.6/24/94), 638 So.2d 1216, 1220, writ denied, 94-1926 (La.12/16/94), 648 So.2d 386. However, if a defendant is lulled into a misapprehension of the strength of the State’s case by the State’s failure to fully disclose, such a prejudice may constitute reversible error. Herron, 879 So.2d at 787.
The defendant has no general constitutional right to unlimited discovery in a criminal case. State v. Lynch, 94-0543 (La.App. 1st Cir.5/5/95), 655 So.2d 470, 478, writ denied, 95-1441 (La.11/13/95), 662 So.2d 466. However, the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady, 373 U.S. at 87, 83 S.Ct. 1194 at 1196-97, 10 L.Ed.2d 215. Favorable evidence includes both exculpatory evidence and evidence impeaching the testimony of a witness when the reliability or credibility of that witness may be determinative of the defendant’s guilt or innocence, or when it may have a direct bearing on the sentencing determination of the jury. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); Giglio v. United States, 405 U.S. 150, 154-55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, “if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” Kyles v. Whitley, 514 U.S. 419, 433-34, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995) (citing Bagley, 473 U.S. at 682, 105 S.Ct. at 3383). Bagley's touchstone of materiality is a “reasonable probability” of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence, he received a fair trial, which is understood as a trial resulting in a verdict worthy of confidence. A “reasonable probability” of a different result is accordingly shown when the government’s evidentiary suppression “undermines confidence in the outcome of the trial.” Kyles, 514 U.S. at 434, 115 S.Ct. at 1566; Bagley, 473 U.S. at 678, 105 S.Ct. at 3381; see also Smith v. Cain, — U.S. -, 132 S.Ct. 627, 630, 181 L.Ed.2d 571 (2012).
| ^Late disclosure, as well as nondisclosure, of evidence favorable to the defendant requires reversal if it has significantly impacted the defendant’s opportunity to present the material effectively in its case, and compromised the fundamental fairness of the trial. The impact on the defense of late disclosure of favorable evidence must be evaluated in the context of the entire record. State v. Harris, 2001-2730 (La.1/19/05), 892 So.2d 1238, 1250, cert. denied, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005). The State’s constitutional obligation to disclose exculpatory evidence does not relieve the defense of its obligation to conduct its own investiga tion and prepare a defense for trial as the State is not obligated under Brady or its progeny to furnish the defendant with information he already has or can obtain with reasonable diligence. State v. Harper, 2010-0356 (La.11/30/10), 53 So.3d 1263, 1271.
The defendant’s argument is that the information regarding the destruction of the pocket lint and field test should have been made known to him prior to the morning of trial. However, we note that the defendant did not first request infor *143 mation concerning the pocket lint and field test kit until the day before the start of trial. Additionally, Brady only requires disclosure of evidence which presents a “reasonable probability that, had the evidence been disclosed to the defense, the result of the outcome would have been different.” Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. Here, the defendant was still found with a 30-milligram cocaine rock in his pocket, which was sufficient to establish all of the elements of the crime of possession of a Schedule II controlled dangerous substance. We find that whether or not the defendant would have been made aware of the destruction of the pocket lint and field test kit, this would not “undermine confidence in the outcome of the trial.” This assignment of error has no basis in the record and is without merit.
12sCONVICTION and habitual OFFENDER ADJUDICATION AFFIRMED; SENTENCE AMENDED TO DELETE THE RESTRICTION OF PAROLE, AND AFFIRMED AS AMENDED; REMANDED TO THE TRIAL COURT FOR CORRECTION AND TRANSMISSION OF THE AMENDED COMMITMENT ORDER.

. Count II was dismissed prior to trial pursuant to an amended bill of information.. Where the amendment of a charging instrument is made to cure deficiencies, not to alter the nature of the crime, a defendant is without a right to be re-arraigned and is nbt entitled to an opportunity to file the usual pretrial motions upon the amended bill. State v. Strother, 362 So.2d 508, 509 (La.1978).

. Predicate # I was set forth as the defendant's April 13, 1994 guilty plea, under Sixteenth Judicial District Court Dgcket #.93-137743, to unauthorized use of a moveable over $1,000.00 Predicate # 2 was set forth as the defendant's June 19, 1996 guilty plea, under Sixteenth Judicial District Court Docket # 96-143283, to aggravated battery. Predicate # 3 was set forth as the defendant’s September 25, 2000 guilty plea, under Sixteenth Judicial District Court Docket #99-154028, to illegal possession of stolen things ($300-$500). Predicate # 4 was set forth as the defendant's Octobér 18, 2004 guilty plea, under Sixteenth Judicial District Court Docket #03-161766, to unauthorized entry of an inhabited dwelling. Predicate # 5 was set forth as the defendant's October 18, 2004 guilty plea, under Sixteenth Judicial District Court Docket # 04-165082, to monetary instrument abuse.

. Cocaine is a controlled dangerous substance classified in Schedule II. La. R.S. 40:964, Schedule 11(A)(4).

. In Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), the United States Supreme Court emphasized three federal constitutional rights that are waived by a guilty plea: the privilege against self-incrimination, the right to a trial by jury, and the right to confront one’s accusers. Because a plea of guilty waives these three fundamental rights of an accused, due, process requires that the plea be a voluntary and intelligent waiver of these rights in order to be valid. See State v. Galliano, 396 So.2d 1288, 1290 (La.1981).

. Louisiana Code of Criminal Procedure article 881.1(B) provides that "[t]he motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.”